1   MORGAN, LEWIS & BOCKIUS LLP
    Sarah Zenewicz, Bar No. 258068
2   One Market
    Spear Street Tower
3   San Francisco, CA  94105-1596
    Tel:    +1.415.442.1000
4   Fax:    +1.415.442.1001
    sarah.zenewicz@morganlewis.com
5
    MORGAN, LEWIS & BOCKIUS LLP
6   Michelle L. Quach, Bar No. 335098
    1400 Page Mill Road
7   Palo Alto, CA 94304
    Tel:    +1.650.843.4000
8   Fax:    +1.650.843.4001
    michelle.quach@morganlewis.com
9
10  Attorneys for Defendant
    ARAMARK SERVICES, INC.
11

12                  UNITED STATES DISTRICT COURT

13               NORTHERN DISTRICT OF CALIFORNIA

14

15  ANGEL CORREA, individually, and on behalf      Case No.   3:24-cv-02223
    of other members of the general public similarly
16  situated,                                       **DEFENDANT ARAMARK SERVICES,
                                                     INC.'S NOTICE OF REMOVAL**
17                      Plaintiff,
                                                     [28 U.S.C. §§ 1332, 1441,1446, and 1453]
18              vs.
                                                     [Santa Clara County Superior Court
19  ARAMARK SERVICES, INC., a Delaware              Case No. 24CV431992]
    corporation; and DOES 1 through 50, inclusive;
20
21                      Defendants.

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. PROCEDURAL BACKGROUND ................................................................. 1

II. REMOVAL IS TIMELY ............................................................................ 2

III. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ................................................ 2

    A. Diversity of Citizenship Exists. .......................................................... 2

        1. Plaintiff is a Citizen of California. .............................................. 3

        2. Defendant is a Citizen of Delaware and Pennsylvania. .............. 3

        3. Doe Defendants' Citizenship Must Be Disregarded. .................. 4

    B. The Putative Class Has More Than 100 Members................................. 4

    C. The Amount In Controversy Exceeds Five Million Dollars. ................ 4

        1. Plaintiff's Cause of Action for Failure to Provide Meal Periods Places At Least $1,767,662.82 in Controversy. ......................... 7

        2. Plaintiff's Cause of Action for Failure to Provide Rest Periods Places At Least $1,767,662.82 in Controversy. ......................... 8

        3. Plaintiff's Cause of Action for Failure to Pay Overtime Wages Puts At Least $1,325,747.12 in Controversy. .............................. 9

        4. Plaintiff's Waiting Time Penalty Claim Places At Least $7,684,447.20 in Controversy .................................................. 10

        5. Plaintiff's Request for Attorneys' Fees Increases The Amount In Controversy By At Least $1,000,000................................... 12

        6. Summary of the Amount Placed In Controversy ....................... 12

        7. Plaintiffs' First Cause of Action for Failure to Pay Minimum Wages, and Fifth Cause of Action for Failure to Furnish Accurate Itemized Wage Statements Put Additional Amounts in Controversy, Further Exceeding the CAFA Threshold. ................ 13

    D. CAFA's Exceptions to Removal Do Not Apply. ................................ 13

IV. VENUE ................................................................................................ 15

V. NOTICE ............................................................................................... 15

VI. CONCLUSION ...................................................................................... 15

Case No.       i       DEFENDANT'S NOTICE OF REMOVAL

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Arias v. Residence Inn by Marriott*,
   936 F.3d 920 (9th Cir. 2019).................................................................... 5, 6, 8

5

*Armstrong v. Church of Scientology Int'l*,
6   243 F.3d 546 (9th Cir. 2000) ........................................................................... 3

7

*Benko v. Quality Loan Serv. Corp.*,
8   789 F.3d 1111 (9th Cir. 2015) ....................................................................... 14

9

*Boon v. Allstate Ins. Co.*,
   229 F. Supp. 2d 1016 (C.D. Cal. 2002)........................................................... 3

10

*Burgos v. Citibank, N.A.*,
11   2023 WL 5532123 (N.D. Cal. Aug. 28, 2023)............................................. 5, 8

12

*Chalian v. CVS Pharmacy, Inc.*,
13   2017 WL 1377589 (C.D. Cal. Apr. 11, 2017) .............................................. 14

14

*Chavez v. Pratt (Robert Mann Packaging), LLC*,
   2019 WL 1501576 (N.D. Cal. Apr. 5, 2019) ................................................... 8

15

*Danielsson v. Blood Centers of Pac.*,
16   2019 WL 7290476 (N.D. Cal. Dec. 30, 2019) ................................................ 8

17

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   574 U.S. 81 (2014) ...................................................................................... 5, 6

18

*Espinosa v. Genesis Healthcare, Inc.*,
19   2020 WL 10641865 (C.D. Cal. Mar. 31, 2020) .............................................. 8

20

*Ford v. CEC Entm't, Inc.*,
21   2014 WL 3377990 (N.D. Cal. July 10, 2014) ............................................... 11

22

*Fritsch v. Swift Transp. Co. of Arizona, LLC*,
   899 F.3d 785 (9th Cir. 2018)......................................................................... 12

23

*Hertz Corp. v. Friend*,
24   559 U.S. 77 (2010) .......................................................................................... 3

25

*Ibarra v. Manheim Invs., Inc.*,
26   775 F.3d 1193 (9th Cir. 2015)......................................................................... 5

27

*Ibarra v. Wells Fargo Bank, N.A.*,
   2018 WL 5276295 (C.D. Cal. Sept. 28, 2018) .............................................. 12

28

*In re Taco Bell Wage and Hour Actions*,
   222 F. Supp. 3d 813 (E.D. Cal. 2016) .................................................................................. 12

*Jadeja v. Redflex Traffic Sys, Inc.*,
   2010 WL 4916413 (N.D. Cal., Nov. 22, 2010) ..................................................................... 14

*Jauregui v. Roadrunner Transp. Servs., Inc.*,
   28 F.4th 989 (9th Cir. 2022) ................................................................................................... 5

*Kanter v. Warner-Lambert Co.*,
   265 F.3d 853 (9th Cir. 2001) ................................................................................................... 3

*Korn v. Polo Ralph Lauren Corp.*,
   536 F. Supp. 2d 1199 (E.D. Cal. 2008) ................................................................................... 5

*LaCross v. KnightTransp. Inc.*,
   775 F.3d 1200 (9th Cir. 2015) ............................................................................................ 5, 6

*Lew v. Moss*,
   797 F.2d 747 (9th Cir. 1986) ................................................................................................... 3

*Lewis v. Verizon Communs., Inc.*,
   627 F.3d 395 (9th Cir. 2010) ................................................................................................... 7

*Mamika v. Barca*,
   68 Cal. App. 4th 487 (1998) ................................................................................................. 10

*Marano v. Liberty Mut. Grp., Inc.*,
   2021 WL 129930 (C.D. Cal. Jan. 14, 2021) ........................................................................... 6

*Mendoza v. Savage Servs. Corp.*,
   2019 WL 1260629 (C.D. Cal. Mar. 19, 2019) ..................................................................... 8, 9

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
   526 U.S. 344 (1999) ................................................................................................................ 2

*Newcombe v. Adolf Coors Co.*,
   157 F.3d 686 (9th Cir. 1998) ................................................................................................... 4

*Oda v. Gucci Am., Inc.*,
   2015 WL 93335 (C.D. Cal. Jan. 7, 2015) ............................................................................... 5

*Phillips v. Kaiser Found. Health Plan, Inc.*,
   953 F. Supp. 2d 1078 (N.D. Cal. 2011) ................................................................................. 13

*Pineda v. Bank of Am., N.A.*,
   50 Cal. 4th 1389 (2010) ........................................................................................................ 10

*Quintana v. Claire's Stores, Inc.*,
   2013 WL 1736671 (N.D. Cal. Apr. 22, 2013) ...................................................................... 11

*Ray v. Wells Fargo Bank, N.A.*,
    2011 WL 1790123 (C.D. Cal. May 9, 2011) ........................................................ 10

*Ridgeway v. Wal-Mart Stores Inc.*,
    269 F. Supp. 3d 975 (N.D. Cal. 2017) ............................................................. 12

*Ritenour v. Carrington Mortg. Servs., LLC*,
    228 F. Supp. 3d 1025 (C.D. Cal. 2017)............................................................ 6

*Salter v. Quality Carriers, Inc.*,
    974 F.3d 959 (9th Cir. 2020)............................................................................ 6

*Sanchez v. Russell Sigler, Inc.*,
    2015 WL 12765359 (C.D. Cal. April 28, 2015) ............................................. 5

*Singer v. State Farm Mut. Auto Ins. Co.*,
    116 F.3d 373 (9th Cir. 1997) .......................................................................... 5

*Soliman v. Philip Morris, Inc.*,
    311 F.3d 966 (9th Cir. 2002) .......................................................................... 4

*State Farm Mut. Auto. Ins. Co. v. Dyer*,
    19 F.3d 514 (10th Cir. 1994)........................................................................... 3

*Stevenson v. Dollar Tree Stores, Inc.*,
    2011 WL 4928753 (E.D. Cal. Oct. 17, 2011) ............................................... 11

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*,
    602 F.3d 1087 (9th Cir. 2010)........................................................................ 2

*Washington v. Hovensa LLC*,
    652 F.3d 340 (3d Cir. 2011)............................................................................ 3

**Statutes**

28 U.S.C. § 1332 ................................................................................................. 1, 2

28 U.S.C. § 1332(a) ............................................................................................... 4

28 U.S.C. § 1332(c)(1) ....................................................................................... 3, 4

28 U.S.C. § 1332(d) ............................................................................................. 13

28 U.S.C. § 1332(d)(2) ...................................................................................... 2, 3

28 U.S.C. § 1332(d)(2)(A) .................................................................................... 4

28 U.S.C. § 1332(d)(4)(A) .................................................................................. 14

28 U.S.C. § 1332(d)(4)(A)(i) ............................................................................ 14

28 U.S.C. § 1332(d)(4)(B) ............................................................................... 13

28 U.S.C. § 1332(d)(5) ...................................................................................... 4

28 U.S.C. § 1332(d)(5)(B) ................................................................................. 2

28 U.S.C. § 1332(d)(6) ................................................................................... 4, 6

28 U.S.C. § 1441 ............................................................................................ 1, 2

28 U.S.C. § 1441(a) ......................................................................................... 15

28 U.S.C. § 1441(b)(1) ...................................................................................... 4

28 U.S.C. § 1446 ............................................................................................ 1, 2

28 U.S.C. § 1446(b)(3) ...................................................................................... 2

28 U.S.C. § 1446(d) ........................................................................................ 15

28 U.S.C. § 1453 ............................................................................................ 1, 2

Bus. & Prof. Code § 17208 ...................................................................... 7, 9, 10

Lab. Code § 203 .............................................................................................. 10

Lab. Code § 226.7 ............................................................................................. 8

Lab. Code § 226.7(b) ........................................................................................ 7

Lab. Code § 512(a) ............................................................................................ 7

**Other Authorities**

Senate Judiciary Report, S. REP. 109-14 ............................................................ 6

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant Aramark Services, Inc. ("Defendant") hereby removes the above-entitled action from the Superior Court of the State of California, County of Santa Clara, to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, because diversity of citizenship jurisdiction exists and the amount in controversy exceeds $5 million.

## I. PROCEDURAL BACKGROUND

1. On February 27, 2024, Plaintiff Angel Correa ("Plaintiff") filed a putative class action complaint in the Superior Court of the State of California, County of Santa Clara, entitled *Angel Correa, individually, and on behalf of other members of the general public similarly situated v. Aramark Services, Inc., a Delaware Corporation; and Does 1 through 50, inclusive,* Case No. 24CV431992 (the "Complaint").

2. On March 15, 2024, Plaintiff served copies of the Summons, Complaint, Civil Case Cover Sheet, the Court's Order designating the action as complex, and the Initial Case Management Conference on the registered agent for Defendant. A true and correct copy of the Complaint is attached as **Exhibit A** and the other case-initiating documents Plaintiff's counsel served on Defendant is attached as **Exhibit B.** These documents are incorporated by reference.

3. In their Complaint, Plaintiff seeks to represent the following putative class of persons employed by Defendant in California: "All non-exempt employees who worked for Defendants in the State of California at any time between four years prior to the filing of this complaint and the date of final judgment in this action." (the "Class"). (Compl. ¶15).

4. Plaintiff alleges six causes of action for: (1) Failure to Pay Minimum and Overtime Wages; (2) Failure to Provide Meal Periods; (3) Failure to Provide Rest Periods; (4) Failure to Timely Pay Wages Upon Termination; (5) Failure to Provide Accurate Itemized Wage Statements; and (6) Unfair Business Practices. (Compl. ¶¶ 37-88).

5. Exhibit A through B constitute all the pleadings, process, and orders served upon or filed by Defendant in the Superior Court action.

1    **II.     REMOVAL IS TIMELY**

2          6.     Plaintiff served the Complaint on Defendant on March 15, 2024.  Because this

3    Notice of Removal is filed within thirty days of service of the Complaint, it is timely under 28

4    U.S.C. §§ 1446(b)(3) and 1453.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

5    344, 354 (1999).

6          7.     No previous Notice of Removal has been filed or made with this Court for the

7    relief sought herein.

8    **III.    THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER
          THE CLASS ACTION FAIRNESS ACT**

9

10         8.     Plaintiff brings this action on behalf of the putative Class.[1]  (Compl. ¶ 1).

11   Removal based upon Class Action Fairness Act ("CAFA") diversity jurisdiction is proper

12   pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 because: (i) diversity of citizenship exists

13   between at least one putative class member and Defendant; (ii) the aggregate number of putative

14   class members in all proposed classes is 100 or greater; and (iii) the amount placed in controversy

15   by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs.  28 U.S.C.

16   §§ 1332(d)(2) & (d)(5)(B), 1453.  Although Defendant denies Plaintiff's factual allegations and

17   denies that Plaintiff or the putative classes he purports to represent are entitled to the relief

18   requested, based on Plaintiff's allegations in the Complaint and prayer for relief, all requirements

19   for jurisdiction under CAFA have been met in this case.

20         **A.     Diversity of Citizenship Exists.**

21         9.     To satisfy CAFA's diversity requirement, a party seeking removal need only show

22   that minimal diversity exists, that is, one putative class member is a citizen of a state different

23   from any defendant.  28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg.,*

24   *Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.,* 602 F.3d

25

26   _____

     [1] Defendant denies and reserves the right to contest at the appropriate time that this action can
27   proceed as a class action.  Defendant further denies Plaintiff's claims and denies that they can
     recover any penalties.  Defendant contends that Plaintiff has pled an overly broad and
28   inappropriate class definition, but Defendant premises its Removal based upon the "four corners"
     of the Complaint as pled.

1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).  As explained below, Plaintiff is a citizen of California and Defendant is a citizen of Delaware and Pennsylvania.

### 1.   Plaintiff is a Citizen of California.

10.   "An individual is a citizen of the state in which he is domiciled . . . ."  *Boon v. Allstate Ins. Co.,* 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001)).  For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l,* 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss,* 797 F.2d 747, 750 (9th Cir. 1986)).  Evidence of continuing residence creates a presumption of domicile.  *Washington v. Hovensa LLC,* 652 F.3d 340, 395 (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).

11.   In his Complaint, Plaintiff alleges that he "is a resident of the County of Santa Clara in the State of California."  (Compl. ¶ 1).  Therefore, Plaintiff is domiciled in California and is a citizen of California for diversity jurisdiction purposes.  Moreover, Plaintiff has brought claims on behalf of "all non-exempt employees who worked for Defendants in the State of California at any time between four years prior to the filing of this complaint and the date of final judgment in this action."  Compl. ¶ 15.  Thus, Plaintiff and at least one putative class member are citizens of California for diversity jurisdiction purposes.

### 2.   Defendant is a Citizen of Delaware and Pennsylvania.

12.   "[A] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1). 28 U.S.C. § 1332(c)(1).  A corporation's "principal place of business" is where its "officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings[.]"  *Hertz Corp. v.*

1  *Friend*, 559 U.S. 77, 92-93 (2010).  Aramark is a corporation formed under Delaware law.

2  (Request for Judicial Notice ("RJN,") Exhs. 1, 2; Golembo Decl., ¶ 2).  Its principal place of

3  business and corporate headquarters is in Philadelphia, Pennsylvania, where its officers direct,

4  control, and coordinate corporate activities.  *Id*.  Thus, Defendant is a citizen of Delaware and

5  Pennsylvania.  28 U.S.C. § 1332(c)(1).

6                  **3.**      **Doe Defendants' Citizenship Must Be Disregarded.**

7          13.      For purposes of determining diversity for removal, the existence of "Doe"

8  defendants are immaterial.  28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is

9  removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of

10  defendants sued under fictitious names shall be disregarded."); *see also Soliman v. Philip Morris*,

11  *Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) ("The citizenship of fictitious defendants is disregarded

12  for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute

13  a named defendant."); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998)

14  (holding that for removal purposes, the citizenship of defendants sued under fictitious names are

15  disregarded).

16          14.      Accordingly, because Plaintiff is a citizen of California and Defendant is a citizen

17  of Delaware and Pennsylvania, diversity jurisdiction exists under CAFA.  28 U.S.C. §

18  1332(d)(2)(A) (requiring only "minimal diversity").

19        **B.**      **The Putative Class Has More Than 100 Members.**

20          15.      22.      CAFA's requirement that proposed class membership be no less than 100

21  (28 U.S.C. § 1332(d)(5)) is satisfied here because the putative class has more than 100 members.

22  Plaintiff seeks to represent all current and former non-exempt employees of Defendant since

23  February 27, 2020.  (Compl. ¶ 15).  The Class includes more than 3302 persons.  (Tucker Decl., ¶

24  3).

25        **C.**      **The Amount In Controversy Exceeds Five Million Dollars.**

26          16.      Pursuant to CAFA, the claims of the individual members in a class action are

27  aggregated to determine if the amount in controversy exceeds $5 million exclusive of interest and

28  costs.  28 U.S.C. § 1332(d)(6).

17.     A removing party need only show that it is more likely than not that the amount in controversy exceeds $5 million.  *See Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

18.     A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014).  It is beyond dispute that "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (internal citations omitted); *see also Dart Cherokee*, 574 U.S. at 84 (holding that a "statement 'short and plain' need not contain evidentiary submissions"); *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (reversing district court's order remanding the action to state court due to an "inappropriate demand of certitude from [the defendant] over its assumptions used in calculating the amount in controversy" for purposes of CAFA removal).

19.     A removing defendant "is not required to comb through its records to identify and calculate the exact frequency of violations .... [A] defendant may calculate the amount in controversy based on reasonable assumptions."  *Burgos v. Citibank, N.A.*, 2023 WL 5532123, at *4 (N.D. Cal. Aug. 28, 2023) (quoting *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015)); *see also Sanchez v. Russell Sigler, Inc.,* 2015 WL 12765359, at *2 (C.D. Cal. April 28, 2015) ("[A] removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages.").  The burden to establish the jurisdictional amount under CAFA "is not 'daunting,' as courts recognize that under this standard, a removing defendant is not obligated to 'research, state and prove the plaintiff's claims for damages.'"  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *LaCross v. KnightTransp. Inc.,* 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are

1   not stipulating to damages suffered, but only estimating the damages in controversy"). The

2   ultimate inquiry is what amount is put in controversy by the plaintiff's complaint, not what a

3   defendant may actually owe. *LaCross,* 775 F.3d at 1202 (internal citation omitted) (explaining

4   that courts are directed "to first look to the complaint in determining the amount in

5   controversy.").

6        20.    Under *Dart Cherokee,* a removing defendant is not required to submit evidence in

7   support of its removal allegations. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir.

8   2020) ("a removing defendant's notice of removal need not contain evidentiary submissions but

9   only plausible allegations of jurisdictional elements.") (internal quotations omitted). The

10  allegations in the removing defendant's notice of removal "may rely on 'a chain of reasoning that

11  includes assumptions' and 'an assumption may be reasonable if it is founded on the allegations of

12  the complaint.'" *Marano v. Liberty Mut. Grp., Inc.*, 2021 WL 129930, at *2 (C.D. Cal. Jan. 14,

13  2021) (quoting *Arias*, 936 F.3d at 925 (9th Cir. 2019)). Congress intended for federal jurisdiction

14  to be appropriate under CAFA "if the value of the matter in litigation exceeds $5 million either

15  from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of

16  relief sought (e.g., damages, injunctive relief or declaratory relief)." Senate Judiciary Report, S.

17  REP. 109-14, at 42. As the United States Supreme Court has advised, "no antiremoval

18  presumption attends cases invoking CAFA" because Congress intended to "facilitate adjudication

19  of certain class actions in federal court." *Dart Cherokee*, 574 U.S. at 87. When the complaint is

20  "lacking in factual detail," a defendant seeking removal is particularly "justified in employing

21  reasonable estimates" to establish the amount in controversy. *Ritenour v. Carrington Mortg.*

22  *Servs., LLC*, 228 F. Supp. 3d 1025, 1029 (C.D. Cal. 2017).

23       21.    Although Defendant denies Plaintiff's factual allegations and denies that he or the

24  putative classes that he seeks to represent are entitled to any relief, Plaintiff's allegations and

25  prayer for relief have "more likely than not" put into controversy an amount that exceeds the $5

26  million threshold when aggregating claims of the putative class member as set forth in 28 U.S.C.

27

28

§ 1332(d)(6).[2]  Based on the allegations in the Complaint, Plaintiff has put more than $5 million in controversy as set forth below, and therefore CAFA removal is appropriate.

> **1.** **Plaintiff's Cause of Action for Failure to Provide Meal Periods Places At Least $1,767,662.82 in Controversy.**

22.     Plaintiff seeks to recover meal period premiums for the Class based on his allegations that he and the Class did not receive compliant meal periods: "[a]t all relevant times set forth herein, Defendants *systemically* failed to provide compliant meal periods to Plaintiff and other similarly situated employees, as required by California law." (Compl. ¶ 23) (emphasis added).  Plaintiff also alleges "Plaintiff and other similarly situated employees *regularly* worked during their meal breaks without being compensated for those hours worked."  (Compl. ¶ 22) (emphasis added).

23.     Labor Code section 512(a) states that non-exempt employees must be provided an uninterrupted meal period of not less than 30 minutes for a work period of more than five hours. Labor Code section 226.7(b) states that if an employer fails to provide an employee a meal period in accordance with state law, the employer shall pay the employee one additional hour of pay for each workday that the meal period is not provided.

24.     Plaintiffs allege that the failure to pay meal period premiums constitutes unfair competition within the meaning of the UCL (Compl. ¶ 86) and therefore the applicable statute of limitations for this claim is four years.  Bus. & Prof. Code § 17208.

25.     Based on Defendant's records, there are more than 3302 members of the putative Class, and they have worked more than 90,279 workweeks during the relevant period, and their average hourly rate of pay is $19.58.  (Tucker Decl., ¶ 3). Defendant's conservative calculation of

---

[2] This Notice of Removal discusses the alleged nature and amount of damages placed in controversy by Plaintiff's Complaint.  Defendant's reference to specific damage amounts are provided solely for the purposes of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum.  Defendant maintains that each of Plaintiff's claims are without merit and that Defendant is not liable to Plaintiff and that Plaintiff and the class suffered no damages.  No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or actually could recover any damages based upon the allegations contained in the Complaint or otherwise.  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Communs., Inc.,* 627 F.3d 395, 400 (9th Cir. 2010).

the amount in controversy for Plaintiff's meal period claim is **$1,767,662.82** (90,279 workweeks x $19.58 meal period premium).  The computation is based on the conservative assumption of a violation rate of <u>only one</u> missed meal period per workweek for the Class.  One violation per workweek is generally accepted as a reasonable and conservative assumption when calculating the amount in controversy for CAFA purposes and where, as here, a plaintiff has alleged that a defendant "routinely" fails to provide meal periods.  (Compl. ¶¶ 10, 31); *see Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) (finding that where complaint alleged that defendants "routinely" failed to provide meal periods, an assumption of one meal break violation per week is "plausible and may prove to be reasonable in light of the allegations in the complaint"); *Burgos v. Citibank, N.A.*, 2023 WL 5532123, at *5 (N.D. Cal. Aug. 28, 2023) (finding 20% violate rate for meal and rest period violations to be reasonable); *Chavez v. Pratt (Robert Mann Packaging), LLC*, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (same); *Danielsson v. Blood Centers of Pac.*, 2019 WL 7290476, at *6 (same); *Espinosa v. Genesis Healthcare, Inc.*, 2020 WL 10641865, at *3 (C.D. Cal. Mar. 31, 2020) (accepting an assumed violation rate of two missed meal breaks per week based on allegations that "class members 'routinely' missed or had non-compliant meal breaks"); *Mendoza v. Savage Servs. Corp.*, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) ("When a defendant's calculation lacks factual support, courts in this district routinely apply a 20% violation rate—that is, one missed meal and rest period per work week—for meal and rest period premiums.").

> **2.** **Plaintiff's Cause of Action for Failure to Provide Rest Periods Places At Least $1,767,662.82 in Controversy.**

26.     Plaintiff seeks to recover rest period premiums for the Class based on his allegations that he and the Class did not receive compliant rest periods: "[a]t all relevant times set forth herein, Defendants *systemically* failed to provide Plaintiff and other similarly situated employees with rest periods of at least 10 minutes for each 4 hours worked or major fraction thereof." (Compl. ¶¶ 25, 64) (emphasis added).

27.     Labor Code Section 226.7 provides that if an employer fails to provide rest periods as required by law, the employer shall pay "one additional hour of pay at the employee's regular

rate of compensation for each work day that the . . . rest period was not provided."

28.     Plaintiff alleges that the failure to pay rest period premiums constitutes unfair competition within the meaning of the UCL (Compl. ¶ 86) and therefore the applicable statute of limitations for this claim is four years.  Bus. & Prof. Code § 17208.

29.     Based on Defendant's records, there are more than 3302 members of the putative Class, and they have worked more than 90,279 workweeks during the relevant period, and their average hourly rate of pay is $19.58.  (Tucker Decl., ¶ 3).  Defendant's conservative calculation of the amount in controversy for Plaintiff's rest period claim is **$1,767,662.82** (90,279 workweeks x $19.58 rest period premium).  The computation is based on the conservative assumption of a violation rate of <u>only one</u> missed rest period per workweek for the Class.  One violation per workweek is generally accepted as a reasonable and conservative assumption when calculating the amount in controversy for CAFA purposes and where, as here, a plaintiff has alleged that a defendant failed to provide rest periods "systemically."  (Compl. ¶¶ 25, 64); *see Mendoza v. Savage Servs. Corp.*, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) ("When a defendant's calculation lacks factual support, courts in this district routinely apply a 20% violation rate—that is, one missed meal and rest period per work week—for meal and rest period premiums.").

### 3.     Plaintiff's Cause of Action for Failure to Pay Overtime Wages Puts At Least $1,325,747.12 in Controversy.

30.     Plaintiff seeks to recover overtime wages for the Class based on his allegations that he and the Class did not receive their overtime wages: "[a]t all relevant times set forth herein, Defendants *systemically* failed to pay minimum and overtime wages to Plaintiff and other similarly situated employees." (Compl. ¶ 21) (emphasis added).  Plaintiff also alleges "Plaintiff and other similarly situated employees *regularly* worked more than 8 hours per day and/or more than 40 hours per week and were not paid for their overtime hours."  (Compl. ¶ 22) (emphasis added).  Plaintiff further alleges, "Defendants' policy and practice was to pay employees for 8 hours per day and/or 40 hours per week, even if employees worked longer."  *Id*.

31.     Plaintiff alleges, "[d]uring the relevant time period, Defendants willfully failed to pay all wages, including minimum and overtime wages, owed to Plaintiff and class members."

(Compl. ¶ 42).  And Plaintiff also alleges that "Defendants' policy and practice of failing to pay Plaintiff and class members the proper hourly rates for all overtime hours worked" constitutes unfair competition within the meaning of the UCL (Complaint ¶ 86).  Therefore, the applicable statute of limitations for this cause of action is four years.  Bus. & Prof. Code § 17208.

32.   Based on Defendant's records, there are more than 3,302 members of the putative Class, and they have worked more than 90,279 workweeks during the relevant period, and their average hourly rate of pay is $19.58.  (Tucker Decl., ¶ 3).  Defendant's conservative calculation of the amount in controversy for Plaintiff's unpaid overtime claim is **$1,325,747.12** (90,279 workweeks x ($19.58 per hour x 1.5 overtime rate) x 0.5 hours of overtime), which is based on the conservative assumption of only 0.5 hours of unpaid overtime per week at an overtime rate of at least $29.37 per hour.  *See Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (allegation of "consistent overtime work" justified defendant's assumption that each class member was entitled to one hour of overtime per week).

### 4.   Plaintiff's Waiting Time Penalty Claim Places At Least $7,684,447.20 in Controversy

33.   Plaintiffs seeks to recover waiting time penalties for the putative class.  (Compl. ¶¶ 68-74).  Plaintiff alleges that Defendant willfully failed to timely pay final wages to them and the putative class.  Specifically, Plaintiff alleges, "[a]t all relevant times set forth herein, Defendants failed to pay Plaintiff and other similarly situated employees all wages owed upon the separation of their employment, including the unpaid overtime wages described herein." (Compl. ¶ 70).

34.   Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonworkdays," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month."  *Mamika v. Barca,* 68 Cal. App. 4th 487, 492-93 (1998).  As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, the wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days."  *Id.* at 493.

35.   The statute of limitations for waiting-time penalties claims is three years.  *Pineda*

1  *v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1395, 1398 (2010).

2      36.      Based on Defendant's records, there are at least 1,679 former employees since

3  February 27, 2024, who fall within the class.  (Tucker Decl., ¶ 4).  The average pay rate for those

4  1,679 former employees is $19.07 per hour.  (*Id.*)

5      37.      Defendant's conservative calculation of the amount in controversy for Plaintiff's

6  waiting time penalty claim is **$7,684,447.20** (1679 terminated class members x $19.07 average

7  hourly rate x 8 hours per day x 30 days).  The computation of the amount in controversy is based

8  on the allegation that each one of the 1,679 terminated employees was owed but not paid at least

9  some of their wages at termination and accrued 30 days of waiting time penalties based on those

10  unpaid wages.  This is a reasonable assumption given Plaintiff's allegation that Defendant owes

11  penalties because Defendant "systemically failed" to pay minimum and overtime wages, provide

12  meal and rest period premiums due to Defendant's "policy and practices."  (Compl. ¶¶ 21-27).  It

13  is reasonable to calculate the amount in controversy for waiting time penalties based on a 30-day

14  penalty calculated at each former employee's daily wage rate.  *See Ford v. CEC Entm't, Inc.*,

15  2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) ("Assuming a 100% violation rate is thus

16  reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an

17  inference that these sums were ever paid."); *Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671,

18  at *6 (N.D. Cal. Apr. 22, 2013) (finding defendants' waiting time penalties calculation was

19  "supported by Plaintiffs' allegations" and was "a reasonable estimate of the potential value of the

20  claims" where the complaint alleged that the defendants "'regularly required'" putative class

21  members to work off-the-clock without compensation, and the defendants estimated that each

22  putative class member "potentially suffered at least one violation that continues to be unpaid");

23  *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding

24  it reasonable for the defendant to assume, in light of the allegations in the complaint that members

25  of the putative class "'routinely'" missed meal periods, that "all members of the proposed class . .

26  . would have missed a meal period as described in the complaint at least once and were thus

27  entitled to the waiting time penalty").

28

5.    **Plaintiff's Request for Attorneys' Fees Increases The Amount In Controversy By At Least $1,000,000.**

38.    Plaintiff seeks to recover attorneys' fees.  (Compl. ¶¶ 46, 88, Prayer for Relief ¶¶ 2, 29).  Future attorneys' fees are properly included in determining the amount in controversy. *See Fritsch v. Swift Transp. Co. of Arizona, LLC,* 899 F.3d 785, 793-794 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy.").

39.    Plaintiff's counsel has represented that that they have hourly rates between $550 and $850.  *Del Toro v. Centene Corporation, et. al.*, Northern District of California Case No. 5:19-cv-05163-CRB, ECF No. 73-1, Declaration of Ronald Bate in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement (Mar. 18, 2022) (noting that counsel for Plaintiff's counsel, Mr. Bae, represented his hourly billing rate was $850 and represented Ms. Scharrer's hourly billing rate was $550).  Based on the lower $550 per hour rate, Plaintiff's counsel would need to work approximately 1,818 billable hours to reach $1,000,000.00 in attorneys' fees in this action.  To litigate a wage and hour class action through class certification and trial likely would require more than 1,818 hours of work.  *See, e.g.*, *Ridgeway v. Wal-Mart Stores Inc.,* 269 F. Supp. 3d 975, 1003 (N.D. Cal. 2017) (granting fee award based on 10,595.8 following a 16-day class action trial); *Ibarra v. Wells Fargo Bank, N.A.,* 2018 WL 5276295, at *7 (C.D. Cal. Sept. 28, 2018) (granting a fee award to plaintiff's counsel following summary judgment in their favor where class counsel had spent 1,805.55 hours litigating through summary judgment); *In re Taco Bell Wage and Hour Actions,* 222 F. Supp. 3d 813, 847 (E.D. Cal. 2016) (granting a fee award following trial based on 4,016.74 hours billed).  As such, Defendant's assumption that at least $1,000,000 in attorneys' fees has been placed in controversy by this wage and hour class action is reasonable.

6.    **Summary of the Amount Placed In Controversy**

40.    As described above, a reasonable and conservative estimate of the amount placed in controversy by Plaintiffs' causes of action for meal period violations and waiting time penalties

exceeds $5,000,000.

| Cause of Action | Amount in Controversy |
|---|---|
| Meal Period Violations | $1,767,662.82 |
| Rest Period Violations | $1,767,662.82 |
| Overtime Wages Violations | $1,325,747.12 |
| Waiting Time Penalties | $7,684,447.20 |
| Attorneys' Fees | $1,000,000.00 |
| **Total** | **$ 13,545,519.96** |

41.     Defendant has demonstrated by a preponderance of the evidence that the amount placed in controversy by Plaintiff's causes of action exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

**7.      Plaintiffs' First Cause of Action for Failure to Pay Minimum Wages, and Fifth Cause of Action for Failure to Furnish Accurate Itemized Wage Statements Put Additional Amounts in Controversy, Further Exceeding the CAFA Threshold.**

42.     As shown above, using reasonable assumptions grounded in the Complaint's specific allegations, Defendant has demonstrated that Plaintiff's meal and rest period, unpaid overtime wages, and waiting time penalties claims, as well as their request for attorneys' fees, place more than $13 million in controversy.  Plaintiff alleges causes of action for unpaid minimum wages and wage statement penalties, each of which places additional amounts in controversy, thus further exceeding the CAFA jurisdictional limit.

**D.      CAFA's Exceptions to Removal Do Not Apply.**

43.     CAFA's "home-state" and "local controversy" exceptions do not apply to this removal.

44.     The "home state" exception prevents CAFA removal only when all "primary defendants" are citizens of the state in which the action was filed.  28 U.S.C. § 1332(d)(4)(B); *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011) ("[Home state] test requires that all 'primary defendants' be residents of the same state in which the action is filed.").  Defendant is not a citizen of California, the state where this action was

1   originally filed, and so the home state exception to CAFA removal does not apply.

2          45.     The local controversy exception to CAFA requires federal courts to remand

3   removed CAFA cases to the originating state court when <u>all</u> of the following three conditions are

4   met: (1) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate

5   are citizens of the State in which the action was originally filed; (2) at least one defendant is a

6   defendant:  (a) from whom significant relief is sought by members of the putative class, (b) whose

7   alleged conduct forms a significant basis for the claims asserted by the putative class, and (c) who

8   is a citizen of the State in which the action was originally filed; and (3) principal injuries resulting

9   from the alleged conduct or any related conduct of each defendant were incurred in the State in

10   which the action was originally filed.  28 U.S.C. § 1332(d)(4)(A)(i).  The Ninth Circuit

11   recognizes that "Congress intended the local controversy exception to be a narrow one," and that

12   the plaintiff bears the burden of proving that the exception applies based on the facts of the case.

13   *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1116 (9th Cir. 2015).

14          46.     The "local controversy" exception to CAFA jurisdiction does not apply because

15   the following required condition is not met:  at least one defendant *must* be a citizen of the State

16   in which the action was originally filed.  *See* 28 U.S.C. § 1332(d)(4)(A)(i).  Defendant is not a

17   citizen of California, the state where this action was originally filed, and so the local controversy

18   exception to CAFA removal does not apply.

19          47.     The "local controversy" exception to CAFA jurisdiction also does not apply

20   because during the three-year period prior to the filing of this class action, at least one "class

21   action has been filed asserting the same or similar factual allegations against any of the

22   defendants on behalf of the same or other persons . . . ."  *See* 28 U.S.C. § 1332(d)(4)(A); *see also*

23   *Chalian v. CVS Pharmacy, Inc.*, 2017 WL 1377589, at *3 (C.D. Cal. Apr. 11, 2017) (holding that

24   the local controversy exception did not apply where similar class action lawsuits had been filed

25   against defendants in the past three years).  Courts have interpreted the language of 28 U.S.C. §

26   1332(d)(4)(A))(ii) broadly in order to narrowly apply the exception.  *See, e.g., Jadeja v. Redflex*

27   *Traffic Sys, Inc.*, 2010 WL 4916413, at *2–3 (N.D. Cal., Nov. 22, 2010) (Plaintiff's contention

28   that the prior class action filed outside California was dissimilar failed because "the plain

language of the statute" focused on whether the factual allegations against the defendant were similar).

48.     During the three-year period prior to the filing of this action, at least three similar wage and hour class action lawsuits have been filed against Defendant, negating application of the local controversy exception.  *See Tiara Billups-Larkin v. Aramark Services, Inc.*, N.D. Cal. Case No. 3:21-cv-06852-RS, filed June 6, 2021; *Kelly v. Aramark Services, Inc.*, N.D. Cal. Case No. 3:22-cv-01272-AMO, filed March 1, 2022; and *Jose Baylon v. Aramark Services, Inc.*, Los Angeles Superior Court Case No. 23STCV04307, filed February 27, 2023.

## IV.     VENUE

49.     This action was originally filed in the California Superior Court for the County of Santa Clara.  Venue is proper in this district, pursuant to 28 U.S.C. § 1441(a), because it embraces the county in which the removed action was pending.

## V.     NOTICE

50.     Defendant will promptly serve Plaintiff with this Notice of Removal and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

## VI.     CONCLUSION

51.     Based on the foregoing, Defendant respectfully requests that this action be removed to this Court.  If any question arises as to the propriety of the removal of this action, Defendant respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

Dated: April 15, 2024                                        MORGAN, LEWIS & BOCKIUS LLP


                                                            By:  */s/Sarah Zenewicz*
                                                                 Sarah Zenewicz
                                                                 Michelle L. Quach
                                                                 Attorneys for Defendant
                                                                 ARAMARK SERVICES, INC.