Ronald H. Bae (SBN 186826)
rbae@AequitasLegalGroup.com
Olivia D. Scharrer (SBN 291470)
oscharrer@AequitasLegalGroup.com
Carson M. Turner (SBN 345992)
cturner@AequitasLegalGroup.com
AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106
Telephone:     (213) 674-6080
Facsimile:     (213) 674-6081

Attorneys for Plaintiff ANGEL CORREA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

| | |
|---|---|
| ANGEL CORREA, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ARAMARK SERVICES, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | **Case Number:  5:24-cv-02223-EJD**<br>[Honorable Edward J. Davila]<br><br>**DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Hearing Date:    March 26, 2026**<br>**Time:              9:00 a.m.**<br>**Location:         Courtroom 4 – 5th Floor**<br><br>[Filed concurrently with the Motion for Preliminary Approval and Proposed Order]<br><br>[Complaint filed:   February 27, 2024]<br>[Removal filed:     April 15, 2024] |

-1-

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**DECLARATION OF OLIVIA D. SCHARRER**

I, Olivia D. Scharrer, declare as follows:

1.      I am an attorney at law duly licensed to practice before this Court. I am an attorney with the law firm of Aequitas Legal Group, A Professional Law Corporation, counsel for Plaintiff ANGEL CORREA in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath. I make this declaration in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.

**The Parties**

2.      Defendant ARAMARK SERVICES, INC. ("Aramark" or "Defendant") Aramark is a Fortune 500 company that provides food services and facilities management services to other large companies throughout the United States and internationally. As relevant here, Aramark's Workplace Experiences line of business provides comprehensive dining services for corporate clients.

3.      Plaintiff ANGEL CORREA ("Plaintiff") worked for Aramark as a non-exempt, hourly-paid cook on two separate occasions. From approximately August 2022 to November 2022, Plaintiff worked as a cook at a cafeteria at a Wal-Mart corporate office in San Bruno, California. From approximately March 2023 to May 2023, Plaintiff worked as a cook at a cafeteria at a Cisco Systems office building in San Jose, California. In both locations, Plaintiff's job duties primarily consisted of working at the grill station, where he prepared breakfast and lunch for hundreds of people a day.

**Relevant Procedural History**

4.      On February 13, 2024, Plaintiff submitted a letter to the Labor and Workforce Development Agency ("LWDA") alleging Defendant violated various provisions of the California Labor Code.  The letter to the LWDA alleges the following: (1) Defendant failed to pay Plaintiff and other aggrieved employees all minimum and overtime wages owed to them in violation of Labor Code §§ 510, 1194, 1197, 1197.1, and 1198; (2) Defendant failed to provide Plaintiff and other aggrieved employees with compliant meal breaks or pay premium compensation in lieu

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-2-

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

thereof, in violation of California Labor Code §§ 226.7 and 512; (3) Defendant failed to provide Plaintiff and other aggrieved employees with compliant rest breaks or pay premium compensation in lieu thereof, in violation of California Labor Code § 226.7; (4) Defendant failed to provide Plaintiff and other aggrieved employees with accurate itemized wage statements, in violation of California Labor Code § 226; (5) Defendant failed to timely pay Plaintiff and other aggrieved employees all wages owed at the time of termination or resignation, in violation of California Labor Code §§ 201 – 203; (6) Defendant failed to provide Plaintiff and other aggrieved employees with all wages owed during their employment, in violation of California Labor Code § 204; and (7) Defendants violated Labor Code §§ 558 and 558.1, as a consequence of the violations described.

5. On February 27, 2024, Plaintiff filed the class action complaint in this case. The complaint alleged the following causes of action: (1) failure to pay regular and overtime wages under Labor Code §§ 510, 1194, and 1198; (2) failure to provide compliant meal periods under Labor Code §§ 226.7 and 512; (3) failure to provide compliant rest periods under Labor Code § 226.7; (4) failure to pay wages timely upon termination under Labor Code §§ 201-203; (5) failure to provide accurate itemized wage statements under Labor Code § 226(a); and (6) engaging in unfair competition in violation of California Business & Professions Code § 17200, *et seq*. The complaint defined the putative class as all of Defendant's non-exempt California employees between February 27, 2020 and the date of final judgment in this action.

6. On April 15, 2024, Defendant removed the case to the United States District Court for the Northern District of California, and the action was assigned to Magistrate Judge Virginia K. DeMarchi.

7. On April 15, 2024, the Court issued an Order setting the initial case management conference and related Alternative Dispute Resolution Deadlines.

8. On April 18, 2024, Defendant filed a Declination of Magistrate Judge Jurisdiction.

9. On April 19, 2024, the Court issued an Order reassigning the case to the Honorable Edward J. Davila, and issued a Notice Resetting Case Management Conference Following Reassignment.

10. On April 22, 2024, Defendant filed a Motion to Dismiss and Strike Plaintiff's

-3-

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

PLA000071

5:24-CV-02223-EJD

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

complaint.

11.    On May 6, 2024, Plaintiff filed a First Amended Complaint ("FAC"), which added facts to support Plaintiff's allegations.

12.    On May 15, 2024, the Parties filed a Joint Stipulation to extend the time for Defendant to respond to Plaintiff's FAC. On May 16, 2024, the Court granted the Parties' Joint Stipulation to extend the time for Defendant to respond to Plaintiff's FAC.

13.    The Parties met and conferred regarding Defendant's intended motion to dismiss, and on June 14, 2024, the Parties filed a Joint Stipulation for Leave for Plaintiff to file a Second Amended Complaint ("SAC").

14.    On June 17, 2024, the Court granted the Parties' Joint Stipulation for Leave for Plaintiff to file his Second Amended Complaint.

15.    On June 17, 2024, Plaintiff filed the SAC, which removed Plaintiff's cause of action for unfair competition in violation of California Business & Professions Code § 17200, *et seq*., and therefore narrowed the relevant time period by one year. The SAC also narrowed the putative class to all non-exempt employees who worked for Defendant in the Workplace Experience Group in the state of California at any time between February 27, 2021 and the date of final judgment in this action.

16.    On July 8, 2024, Defendant filed its Answer to Plaintiff's Second Amended Complaint.

17.    On July 16, 2024, the Initial Case Management Conference was held, and the Court ordered that the Motion for Class Certification be filed by July 29, 2025.

18.    On July 19, 2024, the Court granted the Parties' Joint Stipulation Selecting Mediation, and the Court issued a Notice referring the case to mediation.

19.    On January 10, 2025, the Court notified the Parties that Mediator Jill Manning, Esq., was assigned to the case.

20.    On May 1, 2025, the Parties filed a Joint Stipulation to extend the deadline for Plaintiff to file his Motion for Class Certification in this case.

21.    On May 2, 2025, the Court granted the Parties' Joint Stipulation to extend the

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

deadline for Plaintiff to file his Motion for Class Certification in this case.

22. On May 22, 2025, the Parties attended mediation with court-appointed mediator Jill Manning, Esq., and reached an agreement to resolve the case in its entirety. The Memorandum of Understanding ("MOU") was fully executed on June 4, 2025.

23. On November 13, 2025, the Parties filed a Joint Stipulation for Leave for Plaintiff to file a TAC to add a claim for PAGA penalties.

24. On November 14, 2025, the Court granted the Parties' Joint Stipulation for Leave for Plaintiff to file his TAC. The same day, Plaintiff filed the TAC. The TAC narrowed the putative class to all non-exempt employees who worked for Defendant in the Workplace Experience Group line of business who worked at Wal-Mart and Cisco locations in the state of California at any time between February 27, 2021 and the date of preliminary approval in this action. The TAC defined the PAGA Members as all non-exempt employees who worked for Defendant in the Workplace Experience Group line of business who worked at Wal-Mart and Cisco locations in the state of California at any time between February 27, 2023 and the date of preliminary approval in this action.

**Discovery and Investigation**

25. Over the course of the last 2.5 years, Plaintiff's counsel expended significant time and resources conducting investigation and discovery regarding the class and PAGA claims, as follows:

*Pre-Filing Investigation*

26. Plaintiff's counsel made a request for Plaintiff's employment records pursuant to California Labor Code §§ 226(b), 432, and 1198.5. The documents were produced on June 16, 2023. Plaintiff also provided several documents to his counsel, including paystubs, onboarding documents, and termination documents. Plaintiff also requested documents related to wage-and-hour claims against Defendant from the California Division of Labor Standards Enforcement pursuant to a Public Records Act request. Plaintiff's counsel reviewed and analyzed all of these records prior to filing the complaint.

/ / /

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

Written Discovery

27. On July 8, 2024, Defendant propounded Interrogatories (Set 1) and Requests for Production of Documents (Set 1) on Plaintiff.

28. On July 12, 2024, Plaintiff propounded a comprehensive set of initial discovery requests on Defendant, consisting of Interrogatories (Set 1) and Requests for Production of Documents (Sets 1-3). These requests sought: Plaintiff's time records, payroll records, and other employment records; the putative class members' names and contact information; relevant policy documents; the putative class members' time and payroll records; and other relevant information and documents.

29. On August 28, 2024, Plaintiff responded to the requests propounded by Defendant and produced an initial round of documents responsive to the requests for production.

30. On September 16, 2024, Defendant responded to the requests propounded by Plaintiff and produced an initial round of documents responsive to the requests for production. The parties then agreed to stay formal discovery in order to focus on mediation.

31. Plaintiff's counsel thoroughly analyzed all of the available information and documents to evaluate the strength of each claim and prepare a class-wide damages analysis.

**Settlement Negotiations**

32. All of Plaintiff's Counsel's pre-filing investigation, discovery during litigation, and pre-mediation efforts resulted in the ability to estimate Defendant's exposure, as well as the success probabilities applicable to certification and liability for each alleged cause of action. Plaintiff was thus able to enter settlement negotiations armed with the information required to settle this matter for a fair and reasonable amount, having thoroughly assessed the risks and prepared an estimated class-wide damages model.

33. On May 22, 2025, the Parties participated in a private mediation with Court-appointed mediator Jill Manning, Esq., a well-respected mediator who is highly knowledgeable and experienced in wage-and-hour class actions. The parties negotiated vigorously, and were able to reach an agreement.

34. Between May 2025 and September 2025, the parties negotiated the terms of the

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

MOU, and the Class Action and PAGA Settlement Agreement ("Settlement Agreement"). The Settlement Agreement was fully executed on October 8, 2025.

35.    The Parties took time to reach an agreement due to negotiations as to the terms of the settlement and also the language to be used in the Class Notice. Nevertheless, the parties worked together as best they could to finalize the settlement terms, which are memorialized in the Settlement Agreement, and the language of the Class Notice. A true and correct copy of the fully-executed Settlement Agreement is attached hereto as **Exhibit A**. The Class Notice is attached to the Settlement Agreement as **Exhibit 1**.

36.    The negotiations were conducted at more than arm's-length and the resulting settlement was the outcome of an informed and educated analysis regarding certification and liability issues and the total exposure in relation to the costs and risks attendant to Plaintiff and the Class.

37.    This settlement was accomplished after discovery and investigation, with Plaintiff having invested in extensive factual and legal research, engaged in numerous discussions and exchanges of correspondence, reviewed and analyzed time and payroll records and data, policy documents, and other relevant documents, and conducted extensive negotiations at the mediation and thereafter. It was only after the parties thoroughly assessed the risks presented by the facts of the case and the current status of the applicable law, that they entered into a well-reasoned settlement.

38.    Moreover, there were risks, uncertainty, and developments regarding a number of factors in the case which gave the parties the perspective and incentive to thoroughly assess the risks of the case. Some of the primary risks were that: (1) Defendant contended that the meal and rest break policies in the employee handbook were facially compliant; (2) Defendant contended that if Plaintiff and aggrieved employees ever worked off-the-clock, they had violated Defendant's policy by failing to timely report this off-the-clock work; (3) Defendant contended that Plaintiff's meal period claim overlaps with Plaintiff's unpaid minimum wage and overtime claims because Defendant's policy offered meal periods in compliance with California law, and that Plaintiff's "choice" not to take breaks timely does not create liability for Defendant; and (4) Defendant

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-7-

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

contended that Plaintiff's claim for unpaid rest period premiums lacked certifiability and manageability for purposes of class certification.

39.    These risks are in addition to the ordinary risks that Plaintiff would be unable to prevail on one or more claims at class certification and trial. A total victory for the Class was far from guaranteed, and achieving it at class certification and trial and surviving any post-trial motions or appeals would have come at great litigation costs and expenses to the Class. These factors also support a finding that the settlement is fair and reasonable.

**Exposure Assessment**

40.    As a result of Plaintiff's investigation and discovery, pre-mediation efforts, Plaintiff was able to fairly estimate the exposure for each claim alleged in the complaint. The following data, which was presented at mediation, forms the basis for Plaintiff's damages analysis:

- Total number of class members in the relevant time period (February 27, 2021 to December 2, 2024): 300
- Total number of workweeks in the relevant time period: 17,000
- Total number of employees in the waiting time penalties subclass (February 27, 2021 to December 2, 2024): 180
- Total number of employees in the wage statement subclass (February 27, 2023 to December 2, 2024): 165
- Average regular hourly rate: $22.00

Unpaid Wage Claim

41.    Plaintiff alleged that Aramark had a pattern and practice of failing to pay employees for all hours worked. The factual bases for this allegation are that: (1) Plaintiff and the putative class members had to work off-the-clock during their meal breaks and/or before or after their shift in order to keep up with the heavy workload; (2) Defendant had a written policy that allows for an employee's hours to be rounded "in a limited manner, provided that the rounding is fair and consistent and averages out over time;" (3) Defendant failed to pay Plaintiff and the putative class members premiums for non-compliant meal and/or rest breaks; (4) Defendant failed to calculate and pay the correct gross wages based on hours worked; and (5) Defendant failed to pay Plaintiff and

-8-

Declaration of Olivia D. Scharrer in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement

5:24-cv-02223-EJD

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

the putative class members minimum wage for all hours worked as well as overtime pay at one-and-a-half times the regular rate of pay.

42.    Defendant vigorously denied these allegations and contended that employees were properly compensated and that, in the event there were any violations, there were only individualized issued at best, and the liability for failing to comply with Aramark's written handbook policies fell on Plaintiff and the putative class members.

43.    Based on Plaintiff's investigation and discovery and taking into account Defendant's defenses, Plaintiff estimates Defendant's total potential exposure for this claim to be approximately $561,000.00 (1.5 unpaid hours per week x 17,000 workweeks x $22.00 average regular rate). This amount has to be discounted for the risks of prevailing on class certification and at trial on the merits regarding liability and damages. Plaintiff believes that he had an approximately 50% chance of prevailing at certification and an approximately 50% chance of prevailing at trial on liability and damages. Therefore, Plaintiff estimates the realistic exposure for this claim to be approximately **$140,250.00**.

Meal Break Claim

44.    Plaintiff alleged that Defendant failed to provide employees with a 30-minute, off-duty meal break for every 5 hours of work. Plaintiff's theory was that employees missed meal breaks and had late and/or short meal breaks because Plaintiff and putative class members often had to work through their meal breaks to complete the work within their scheduled shift. Because Aramark's timekeeping system forced employees to clock out for 30-minutes for meal breaks, the short meal breaks are not accurately recorded in the time records produced by Aramark. Further, Plaintiff and putative class members' meal periods were also late due to the heavy workload and deadlines to prepare breakfast and lunch. For example, if the shift began at 6:00 a.m., an employee might not clock out for lunch until after 11:00 a.m. The time records produced by Aramark for Plaintiff did not show any late meal breaks, but the time records themselves appeared to be edited by Aramark.

45.    Defendant denied Plaintiff's allegations and maintained that any meal break violations were individualized, and the liability of the non-compliant meal break fell on Plaintiff

-9-

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

and the putative class members due to Aramark's facially compliant handbook policy. If the case had gone forward, Defendant would have relied heavily on the argument that the written meal break policies, as set forth in the employee handbook, were facially compliant.

46. Based on Plaintiff's investigation and discovery and taking into account Defendant's defenses, Plaintiff estimates Defendant's maximum potential exposure for the meal break claim to be approximately $1,496,000.00 (4 meal break violations per week x 17,000 workweeks x $22.00 average regular rate). This amount has to be discounted for the risks of prevailing on class certification and at trial on the merits regarding liability and damages. Plaintiff believes that he had an approximately 30% chance of prevailing at certification and an approximately 30% chance of prevailing at trial on liability and damages. Therefore, Plaintiff estimates the realistic exposure for this claim to be approximately **$134,640.00**.

Rest Break Claim

47. Plaintiff alleged that Defendant failed to provide employees with a 10-minute, duty-free rest break for every 4-hours of work or major fraction thereof. The factual bases for this claim and Defendant's defenses thereto are generally the same as for the meal break claim, but rest breaks were not recorded. Similar to the meal break claim, employees did not have time to take 10-minute rest breaks because of their heavy workload and tight deadlines.

48. Based on Plaintiff's investigation and discovery and taking into account Defendant's defenses, Plaintiff estimates Defendant's total exposure for this claim to be approximately $1,122,000.00 (3 rest break violations per week x 17,000 workweeks x $22.00 average regular rate). This amount has to be discounted for the risks of prevailing on class certification and at trial on the merits regarding liability and damages. Plaintiff believes that he had an approximately 30% chance of prevailing at certification and an approximately 30% chance of prevailing at trial on liability and damages. Therefore, Plaintiff estimates the realistic exposure for this claim to be approximately **$100,980.00**.

Waiting Time Penalties Claim

49. Plaintiff alleges that class members were owed waiting time penalties in connection with the claim for unpaid wages. Defendant argued that it was not liable for waiting time penalties

**A E Q U I T A S   L E G A L   G R O U P**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-10-

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

because it did not willfully fail to pay wages and there was a good faith dispute as to whether any wages were owed to class members. Based on Plaintiff's investigation and discovery and taking into account Defendant's defenses, Plaintiff estimates Defendant's total potential exposure for this claim to be approximately $950,400.00 (180 former employees x $22.00 average regular rate x 8 hours per day x 30 days). This amount has to be discounted for the risks of prevailing on class certification and at trial on the merits regarding liability and damages. Plaintiff believes that he had an approximately 50% chance of prevailing at certification and an approximately 30% chance of prevailing at trial on liability and damages. Therefore, Plaintiff estimates the realistic exposure for this claim to be approximately **$142,560.00**.

Wage Statement Claim

50.    This is a derivative claim alleging that Plaintiff's and the putative class members' wage statements did not accurately show the number of hours worked or the corresponding hourly rate as a result of the alleged failure to correctly calculate and pay the correct gross wages based on hours worked and at the regular rate of pay, resulting in inaccurate itemized wage statements being issued to Plaintiff and the putative class.  The wage statement claim is also pay wages. Defendant denied that there was any liability for the alleged failure to pay wages and contended that any wage statement violations were not willful and that employees suffered no injury. Plaintiff estimates the maximum exposure for this claim to be approximately $660,000.00 (165 employees in the relevant time period x $4,000 penalty per employee). This amount has to be discounted for the risks of prevailing on class certification and at trial on the merits regarding liability and damages. Plaintiff believes that he had an approximately 50% chance of prevailing at certification and an approximately 30% chance of prevailing at trial on liability and damages. Therefore, Plaintiff estimates the realistic exposure for this claim to be approximately **$99,000.00**.

PAGA Penalties Claim

51.    Plaintiff alleged that Defendant was liable for penalties under PAGA and Labor Code § 558 in connection with the claims discussed above. The claim for PAGA penalties is based on Labor Code §§ 201–203, 221, 226, 226.7, 510, 512, 1194, and 1198. There are approximately 6,389 pay periods in the PAGA period. Assuming there is just one $100 penalty per pay period, the

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

PAGA penalties would be **$638,900.00** ($100 x 6,389 pay periods).

52.     Plaintiff believes that this number should be significantly discounted to account for the risk that Plaintiff might not succeed in proving the underlying Labor Code violations and that the Court could use its discretion to reduce any penalties that might be awarded. Further, although PAGA claims do not need to be certified like class claims, a recent published appellate opinion holds that a PAGA claim may be stricken if it is not manageable. *Wesson v. Staples the Office Superstore, LLC*, 68 Cal. App. 5th 746 (2021) (holding that trial courts have inherent authority to strike a PAGA claim that cannot be rendered manageable). Plaintiff believes that Defendant would likely have filed a motion to strike the PAGA claim on the grounds that the claim was unmanageable (*Wesson*, 68 Cal. App. 5th at 765–66) or must be compelled to arbitration (*Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1923–24 (2022)). Plaintiff believes that any award of PAGA penalties would likely be significantly lower than the theoretical maximum based on factors such as the difficulty of proving individual Labor Code violations to support the penalty award and the Court's discretion to reduce penalties to avoid an unjust, arbitrary or oppressive, or confiscatory award. There is also the risk that Defendant would challenge the PAGA claim on manageability grounds. In light of these factors and the uncertainties in the evidence supporting the underlying Labor Code claims, Plaintiff believes that a reasonable estimate of the amount of PAGA penalties that could be awarded at trial is approximately **$159,725.00**.

Estimated Realistic Exposure

53.     Based on the data points used at mediation and the above analysis, Plaintiff estimates Defendant's total realistic exposure to be approximately **$777,155.00**. Thus, the gross settlement amount of $205,000 represents approximately 26% of the estimated realistic exposure ($205,000 ÷ $777,155.00).

## **Proposed Class Counsel**

54.     Ronald H. Bae is the attorney principally in charge of handling this matter. He graduated from UCLA in 1991 with a B.A. in Economics. He obtained a law degree from Southwestern Law School in 1996. He has been practicing for approximately 28 years. While in law school, he served as the Articles Editor of the Southwestern Journal of International Law, as

-12-

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

well as served as an extern/law clerk at the U.S. Bankruptcy Court, California Attorney General's Office (Writs, Trials & Appeals) (where he drafted six appellate briefs) and the U.S. Attorney's Office (Tax Division).

55. After graduating law school in 1996, he was commissioned as a naval officer to serve as a military lawyer for the U.S. Navy Judge Advocate General's Corps. He was stationed overseas in Yokosuka, Japan for 4 years. During that time, he tried numerous court-martial cases, ranging from misdemeanors to major felonies, including second-chairing two capital murder cases, one involving misappropriation of classified material on North Korea. During his tour, he also managed the U.S. Naval Legal Service Office Pacific's claims department whose area of responsibility included mainland Japan, Korea, the Philippines, Hong Kong, Singapore, Diego Garcia, and much of the Indian Ocean to the North Arabian Sea. For his services, he was awarded two Navy Achievement Medals, a Navy Commendation Medal and a Humanitarian Service Medal.

56. After his honorable discharge from the Navy, he practiced law at several Los Angeles defense firms specializing in legal malpractice defense, banking, real estate and commercial litigation. He has defended numerous high-exposure legal malpractice cases where the underlying case involved disputes such as complex binding arbitrations over partnership breakdown, Multi-District Litigation in federal court after a Boeing 747 airplane crash in Guam, and a multitude of business and commercial litigation issues. Currently, he devotes his practice to litigating class action cases involving wage and hour, consumer fraud and unfair business practices on behalf of employees and consumers. Approximately 95% of our firm's caseload consists of class actions in various stages of litigation, both in state and federal courts. Our firm also accepts some individual wage and hour cases with small amounts in controversy as a form of pro bono, so that we can lend our expertise to someone who would not otherwise be able to retain competent counsel.

57. I am an associate attorney at Aequitas Legal Group. I received my Juris Doctor from Loyola Law School in 2013. During law school, I served as a Production Editor of the *Loyola of Los Angeles International and Comparative Law Review*. I also served as a judicial extern to the Honorable Teresa Sanchez-Gordon, Judge of the Los Angeles Superior Court. I earned a Bachelor of Arts, *magna cum laude*, from Oklahoma State University in 2009.

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

58.    Carson M. Turner is an associate attorney at Aequitas Legal Group. She received her Juris Doctor from the University of California, Berkeley, School of Law in 2022 with Pro Bono Honors and a Certificate in Public Interest and Social Justice. During law school, she served as Notes Editor of the *California Law Review* and Executive Editor of the *Berkeley Journal of Employment and Labor Law*. She was co-director of the Wage Justice Clinic, assisting employees in filing wage and hour claims with the California DLSE. She served as a judicial extern to the Honorable Kim McLane Wardlaw of the U.S. Court of Appeals for the Ninth Circuit. She earned a Bachelor of Arts with Highest Honors from the University of California, Berkeley, in 2017.

59.    A few examples of class certification victories obtained by the attorneys of Aequitas Legal Group (via contested motion) in wage and hour class actions are as follows:

a.    In *Preciado v. Adriana's Insurance Services* (L.A.S.C. BC 400171), our motion for class certification for numerous Labor Code violations was granted on behalf of customer service representatives and sales agents;

b.    In *Hernandez v. Brand Connections, Inc.* (L.A.S.C. BC 401775), our motion for class certification for Labor Code violations (i.e., minimum wage/overtime, meal/rest period claims, along with derivative claims) was granted in its entirety;

c.    In *Delgado v. C. A. Hofmann Construction, Inc.* (CIVRS 1105913), a proposed class of construction workers was certified in its entirety for numerous wage and hour claims;

d.    In *Garcia v. Menzies Aviation* (L.A.S.C. BC 452057), a proposed class of airport ramp agents was certified for wage and hour claims;

e.    In *Nguyen v. Inter-Coast International Training, Inc.* (L.A.S. C. BC 461585), a class of non-exempt employees was certified against a for-profit college.

f.    On November 20, 2015, another certification victory was achieved on behalf of a class of 13,267 retail store employees in *Scott-George v. PVH Corp.*, (U.S. District Court, E.D. Cal., 2:13-cv-00441-TLN-DAD);

g.    On March 31, 2021, the Central District of California certified a class of

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-14-

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

healthcare workers in *Espinosa v. Genesis Healthcare, Inc., et al.* (Case No. 2:20-cv-00688-DMG-JC); and

    h.    On December 6, 2021, the Los Angeles Superior Court certified a class of landscape workers in *Park West Wage and Hour Cases* (Case No. JCCP 4920).

60.    The attorneys of our firm have been appointed class counsel (and lead class counsel in consolidated matters) of numerous wage and hour class actions litigated in both state and federal courts. Some of the class actions we have handled through final approval are as follows:

    a.    *Garcia v. Mellano & Company* (L.A.S.C. BC 396063) (class of warehouse and farm workers);

    b.    *Bejar v. Roman Catholic Archbishop of Los Angeles* (L.A.S.C. BC 390260) (class of employees of Our Lady Queen of Angels church);

    c.    *Scott v. Better Beverages, Inc.* (L.A.S.C. BC 403882) (class of delivery drivers);

    d.    *Gorman v. IDEXX Laboratories, Inc.* (L.A.S.C. BC 413933) (class of route drivers);

    e.    *Guzman v. Rockey Murata Landscaping, Inc.* (L.A.S.C. BC 421699) (class of landscaping workers);

    f.    *Hernandez v. Brand Connections, Inc.* (L.A.S.C. BC 401775) (class of warehouse workers);

    g.    *Preciado v. Adriana's Insurance Services, Inc.* (L.A.S.C. BC 400171) (class of customer service representatives and sales agents);

    h.    *Tyree v. BJ's Restaurants* (O.C.S.C. Case No. 30-2009-00259460) (class of kitchen managers);

    i.    *Perez v. Rick's Drive In & Out* (L.A.S.C. BC 426222) (class of restaurant workers);

    j.    *Holloway v. Authentic Recovery Center* (L.A.S.C. BC 442949) (class of substance recovery center workers);

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-15-

Declaration of Olivia D. Scharrer in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement

5:24-cv-02223-EJD

k.    *Silva v. JYM Enterprises* (L.A.S.C. BC 437834) (class of Jack-In-The-Box restaurant workers);

l.    *Jimenez v. Printograph, Inc.* (L.A.S.C. BC 440209) (class of print shop workers);

m.    *Ramirez v. Advanced Parking Systems* (L.A.S.C. BC 455137) (class of parking clerks);

n.    *Zacatenco v. Pinnacle Landscaping Company* (L.A.S.C. BC 466988) (class of landscape laborers);

o.    *Allen v. Labor Ready Southwest, Inc.* (C.D. Cal. 09cv04266) (class of temporary workers);

p.    *Arana v. Adriana's Insurance Services, Inc.* (L.A.S.C. BC 453021) (class of managers);

q.    *Soltero v. Mariposa Horticultural Enterprises* (L.A.S.C. BC 439687) (class of landscape workers);

r.    *Castro v. Marinello School of Beauty* (JCCP Case No. 4704) (class of non-exempt beauty school employees);

s.    *Garcia v. Menzies Aviation* (L.A.S.C. BC 452057) (class of non-exempt employees);

t.    *Gindi v. Walgreen Co.* (U.S.D.C. Case No. 2:13-cv-01154-PSG-FFM) (class of non-exempt retail-store employees);

u.    *Taylor v. Kwikset Corp.* (O.C.S.C. 30-2011-00438371-CU-OE-CXC) (class of non-exempt employees); *Scott-George v. PVH Corp.* (E.D. Cal., 2:13-cv-00441-TLN-DAD) (class of non-exempt employees);

v.    *Marina Landscape Wage & Hour Cases*, Orange County Superior Court Case No. JCCP 4867 (class of non-exempt landscape employees);

w.    *Santos v. Green Bay Packaging, Inc.*, San Bernardino Superior Court Case No. CIVDS 1601404 (class of warehouse workers);

x.    *Del Toro v. Centene Corp.* (U.S.D.C. N.D. Cal, Case No. 4:19-cv-05163-

-16-

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

YGR) (class of non-exempt call center workers); and many others.

61.    As required by the Northern District of California Procedural Guidance for Class Action Settlements, the results obtained by Plaintiff's counsel in a select number of previous class and PAGA action settlements are provided in the following table. No claim form was required in any of these settlements.

| Case Name | Total Settlement Amount | Total Class Size | Method of Notice | Average Recovery per Class Member | Cy Pres Recipient | Admin Costs | Attorneys' Fees & Costs |
|---|---|---|---|---|---|---|---|
| *Bonola v. SoCal JIB Food Mgmt., Inc.* (Los Angeles Superior Court Case No. BC 690994) | $1,000,000 | 2,655 (3 opt-outs) | Mail | $209.26 | None | $50,000 | $333,333.33 fees $16,716.03 costs |
| *Hosseini v. Int'l Coffee & Tea, LLC* (Los Angeles Superior Court Case No. BC 612020) | $1,485,000 | 17,951 (20 opt-outs) | Mail | $48.25 | None | $77,111 | $495,000 fees $16,921.13 costs |
| *Khatri v. Intercontinental Hotels Group Resources, Inc.* (Northern District of California Case No. 3:15-cv-00036) | $975,000 | 1,635 (6 opt-outs) | Mail | $398.18 | Legal Aid Society – Employment Law Center (San Francisco) (50%) Counsel for Justice Veterans Legal Services Project (50%) | $31,569 | $273,000 fees $11,404.47 costs |
| *Lizarraga v. American Landscape, Inc.* (Los Angeles Superior Court Case No. BC 636919) | $640,000 | 798 (1 opt-out) | Mail | $438.59 | None | $12,950 | $213,333.33 fees $20,290.27 costs |

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-17-

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| *Marina Landscape Wage & Hour Cases* (San Bernardino Superior Court Case No. JCP 4867) | $4,666,000 | 4,112 (11 opt-outs) | Mail | $595.35 | Legal Aid at Work $269,160.89 | $24,134 | $1,555,333.33 fees $70,983.98 costs |
| *Santos v. Green Bay Packaging, Inc.* (San Bernardino Superior Court Case No. CIVDS 1601404) | $1,725,000 | 194 (no opt-outs) | Mail | $5,628.86 | None | $8,950 | $575,000 fees $11,551.83 costs |

**Class Representative Enhancement Award**

62.    Plaintiff has spent considerable time and effort in the prosecution of this action, including participating in numerous telephone conferences and email exchanges with Class Counsel, providing documents to Class Counsel, reviewing documents related to this case, consulting with Class Counsel on an ongoing basis to assist in the preparation of targeted investigation and discovery, identifying potential witnesses, reviewing the short-form and long-form settlement agreements, consulting with counsel about the settlement, and other related work.

63.    In addition, Plaintiff is providing Defendant with a general release and has taken on a significant risk to her reputation by filing this lawsuit. The risk was significantly higher because Plaintiff chose to file this lawsuit while she was still working for Defendant.

64.    As a direct result of Plaintiff's time and efforts, all of the Class Members now stand to benefit from the Settlement. Class Counsel therefore fully supports the proposed service award of $7,5000 to Plaintiff as being preliminarily fair, reasonable, and appropriate. Further details regarding Plaintiff's work on the case will be presented in a declaration with the Motion for Final Approval.

**Settlement Administration**

65.    The parties obtained bids from the following settlement administrators for the same services: CPT Group, Inc.; ILYM Group, Inc.; and Simpluris, Inc. All of the administrators were informed that this is a class action settlement with a PAGA component, there are approximately 300 class members, the Notice Packet will be mailed in English and Spanish, the funds from uncashed

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

checks will be sent to the State of California's Unclaimed Property Fund, and the settlement website will contain key deadlines and links to important case documents. The results of the bid process are as follows:

| Settlement Administrator | Bid Amount |
|---|---|
| CPT Group, Inc. | $10,250.00 |
| ILYM Group, Inc. | $7,500.00 |
| Simpluris, Inc. | $10,299.00 |

66.    After reviewing these bids, the parties agreed to use ILYM Group, Inc. ("ILYM") as the settlement administrator due to estimated cost and positive experiences with ILYM in prior cases. The undersigned has worked with ILYM on the following cases between 2020 and the present: *Pimentel v. B.R. Mart, Inc.*, Los Angeles Superior Court Case No. BC 626169 (class action settlement administration); *Del Toro v. Centene Corporation, et al.,* United States District Court – Northern District Case No. 5:19-cv-05163 (class action settlement administration), *Elizalde v. B&D Litho California, Inc.,* San Bernardino Superior Court Case No. CIVSB2400490 (class action Belaire-West notice administration), *Slattum v. OC Developments, LLC, et al.,* Riverside Superior Court Case No. CVRI2400626 (class action Belaire-West notice administration), *Ayala v. Kiewit Infrastructure West Co.*, Los Angeles Superior Court Case No. 23STCV03502 (class action Belaire-West notice administration).

### Requested Attorneys' Fees and Costs

67.    The table below is a summary showing the experience level of lawyers and their staff involved in the case, their hourly rates, hours spent on this case and the resulting lodestar. The following summary was compiled from our firm's computerized billing software which each attorney and paralegal uses to contemporaneously keep track of their billable hours during the litigation. Such time records are prepared and maintained by our firm in the ordinary course of business.

/ / /

/ / /

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-19-

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

| Name | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Ronald H. Bae | Attorney (28th year) | $975/hr. | 9.2 | $8,970.00 |
| Olivia D. Scharrer | Attorney (11th year) | $675/hr. | 25.3 | $17,077.50 |
| Carson M. Turner | Attorney (3rd year) | $500/hr. | 95.8 | $47,900.00 |
| **TOTAL** | | | **130.3** | **$73,947.50** |

68.     To date, our firm has incurred a total of $1,758.82 in necessary litigation expenses.

**Notice to the LWDA**

69.     On February 10, 2026, Plaintiff provided notice of this settlement to the LWDA. A true and correct copy of the LWDA's confirmation that the notice was submitted is attached hereto as **Exhibit B**.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 10th day of February 2026, at Pasadena, California.

_____
OLIVIA D. SCHARRER

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-20-

DECLARATION OF OLIVIA D. SCHARRER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:24-CV-02223-EJD

# EXHIBIT A

Ronald H. Bae (SBN 186826)
rbae@AequitasLegalGroup.com
Olivia D. Scharrer (SBN 291470)
oscharrer@AequitasLegalGroup.com
Carson M. Turner (SBN 345992)
cturner@AequitasLegalGroup.com
AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106
Telephone:    (213) 674-6080
Facsimile:    (213) 674-6081

Attorneys for Plaintiff ANGEL CORREA

MORGAN, LEWIS & BOCKIUS LLP
Sarah Zenewicz, Bar No. 258068
One Market, Spear Street Tower
San Francisco, California 94105-1596
Telephone:    (415) 442-1000
Email:            sarah.zenewicz@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Michelle L. Quach, Bar No. 335098
1400 Page Mill Road
Palo Alto, California 94304
Telephone:    (650) 843-4000
Email:            michelle.quach@morganlewis.com

Attorneys for Defendant
ARAMARK SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL CORREA, individually, and on behalf of other members of the general public similarly situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>ARAMARK SERVICES, INC., a Delaware Corporation; and DOES 1 through 50, inclusive,<br><br>                    Defendants. | Case No. 5:24-cv-02223-EJD<br><br>**STIPULATION OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT** |

This Stipulation of Settlement ("Stipulation" or "Settlement") is made and entered into, as of the date set forth below, between Plaintiff Angel Correa, as an individual, as a representative of the proposed Class described herein and as representative of the State of California ("Plaintiff"), and Defendant Aramark Services, Inc. ("Defendant"), who are parties to the above-captioned litigation (together, the "Parties").

1.    **DEFINITIONS**

1.1    "Action" means the above-captioned action, *Correa v. Aramark Services, Inc.*, United States District Court for the Northern District of California Court Case No. 5:24-cv-02223-EJD.

1.2    "Class Counsel" means Ronald H. Bae, Olivia D. Scharrer and Carson M. Turner of AEQUITAS LEGAL GROUP, A Professional Law Corporation.

1.3    "Class Data" means a confidential spreadsheet that includes, for each Settlement Class Member, their name, last known address, social security number, and number of Eligible Workweeks and Eligible Pay Periods or data sufficient for the Settlement Administrator to determine Eligible Workweeks and Eligible Pay Periods.  The Class Data shall be based on Defendant's personnel and payroll records and provided in a format acceptable to the Settlement Administrator.

1.4    "Class Settlement Period" means the time period from February 27, 2021 through the Preliminary Approval Date.

1.5    "Class Representative" or "Plaintiff" means Plaintiff Angel Correa.

1.6    "Class Representative's Released Claims" means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against the Released Parties, of whatever kind and nature, character, and description, whether in law or equity, whether sounding in tort, contract, federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law or contract, whether known or unknown, and whether anticipated or unanticipated, including all unknown claims covered by California Civil Code Section 1542, by the Class Representative, arising at any time up to and including the date on which the Court enters the Order of Final Approval, for any type of relief, including without limitation claims for wages,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

STIPULATION OF SETTLEMENT
Case No. 5:24-cv-02223-EJD

premium and other forms of pay, unpaid/unreimbursed costs, penalties (including waiting time penalties), general damages, compensatory damages, liquidated damages, punitive damages, interest, attorneys' fees, litigation and other costs, expenses, restitution, and equitable and declaratory relief.  The Class Representative's Released Claims also include, but are not limited to, the Released Claims as well as any other claims under any provision of the Fair Labor Standards Act ("FLSA"), the California Labor Code, any applicable California Industrial Welfare Commission Wage Orders, any city or county Living Wage Ordinances, and claims under state or federal discrimination statutes, including, without limitation, the California Government Code; the Unruh Civil Rights Act, California Civil Code; the California Constitution; the California Business and Professions Code, including but not limited to Sections 17200 *et seq.*; the United States Constitution; the Age Discrimination in Employment Act ("ADEA") and the Older Workers Benefit Protection Act; the Uniformed Services Employment and Reemployment Rights Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*; the Civil Rights Act of 1991; the Family and Medical Leave Act, to the extent not prohibited by law; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*; the Equal Pay Act; the Fair Credit Reporting Act; the Employee Retirement Income Security Act of 1974; the Worker Adjustment and Retraining Notification Act; the Sarbanes-Oxley Act of 2002; the California Family Rights Act; and all of their implementing regulations and interpretive guidelines; any and all claims for monetary recovery and personal or individual relief, except as prohibited by law; and any premiums, penalties, interest, punitive damages, costs, attorneys' fees, injunctive relief, declaratory relief, or accounting based on any of the foregoing claims.  For the avoidance of doubt, this is a complete and general release to the maximum extent by law.  Notwithstanding the foregoing, the release of the Class Representative's Released Claims does not include any claim or right that is not waivable as a matter of law.

1.7    "Court" means the United States District Court for the Northern District of California.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.8     "Defendant's Counsel" means Sarah Zenewicz and Michelle Quach of Morgan, Lewis & Bockius LLP.

1.9     "Effective Date" means the latest of: (i) provided that no appeal from the Final Approval Order is filed, the day after the deadline for any appeals expires; (ii) if an appeal from the Final Approval Order is filed, and the appeal is finally disposed of by ruling, dismissal, denial, or otherwise, the day after the last date for filing a request for further review of the Court of Appeal's decision passes, and no further review is requested; and (iii) if an appeal of the Final Approval Order is filed and there is a final disposition by ruling, dismissal, denial, or otherwise by the Court of Appeal, and review of the Court of Appeal's decision is requested, the day after the request for review is denied with prejudice and/or no further review of the Final Approval Order can be requested.

1.10    "Eligible Workweeks" shall mean the workweeks that each Settlement Class Member worked for Defendant in California during the Class Settlement Period.

1.11    "Eligible Pay Periods" shall mean the pay periods that each PAGA Member worked for Defendant in California during the PAGA Settlement Period.

1.12    "Enhancement Award" means the amount approved by the Court to be paid to the Class Representative, in recognition of his efforts in coming forward as Class Representative and as consideration for a full, general, and comprehensive release of the Class Representative's Released Claims, which shall be in addition to his portion of the Net Settlement Amount.

1.13    "Final Approval Date" means the date on which the Court enters the Order of Final Approval.

1.14    "Final Approval Hearing" means a hearing set by the Court, to take place on a date established by the Court, for the purpose of (i) determining the fairness, adequacy, and reasonableness of the Stipulation terms and associated Settlement pursuant to class action procedures and requirements; (ii) determining the amount of the award of attorneys' fees and costs to Class Counsel; (iii) determining the amounts of the Enhancement Award to the Class Representative; and (iv) entering the Judgment.

1.15    "Gross Settlement Amount" shall mean the amount that Defendant will pay in settlement of this matter.  The Gross Settlement Amount includes all awards of attorneys' fees and costs to Class Counsel, Settlement Administration Costs, Enhancement Award, the PAGA Settlement Payment (paid to the PAGA Members and the LWDA), and payments to the Participating Class Members.  The employer payroll taxes owed on the wage portions of the Individual Settlement Payments to Participating Class Members shall be paid separately from and in addition to the Gross Settlement Amount.

1.16    "Individual PAGA Payment" means the individual amounts paid from the PAGA Payment to the individual PAGA Members for settlement of claims for civil penalties under PAGA.

1.17    "Individual Settlement Payment" means the settlement amount due to each Participating Class Member from the Net Settlement Amount.

1.18    "LWDA" means the California Labor and Workforce Development Agency.

1.19    "LWDA PAGA Payment" means the payment to the LWDA from the PAGA Payment for settlement of claims for civil penalties under PAGA.

1.20    "Net Settlement Amount" is the portion of the Gross Settlement Amount available for distribution to the Participating Class Members, which shall equal the Gross Settlement Amount less PAGA Payment, Court-approved attorneys' fees and costs award to Class Counsel, Settlement Administration Costs, and the Enhancement Award.

1.21    "Notice of Settlement" means the document provided to Settlement Class Members to notify them of the settlement, a copy of which is attached hereto as **Exhibit 1**.

1.22    "PAGA" means the California Labor Code's Private Attorneys General Act.

1.23    "PAGA Members" means Settlement Class Members who worked at least one Eligible Pay Period during the PAGA Settlement Period.

1.24    "PAGA Payment" means the payment in settlement of all claims for PAGA penalties, 75% of which will be distributed as the LWDA PAGA Payment and 25% of which will be distributed as Individual PAGA Payments to the PAGA Members.

1.25    "PAGA Settlement Period" means  the period from February 27, 2023, through the Preliminary Approval Date.

1.26    "Participating Class Members" means the Settlement Class Members who do not timely request to be excluded from the class portion of the settlement.  No claim form is required for a Settlement Class Member to become a Participating Class Member.

1.27    "Preliminary Approval Date" means the date the Court enters the Order preliminary approving the Stipulation of Settlement and setting the Final Approval Hearing.

1.28    "Qualified Settlement Fund" means the Qualified Settlement Fund ("QSF") created under Internal Revenue Code Section 468B, to be overseen by the Settlement Administrator.

1.29    "Released Class Claims" means all claims, rights, demands, liabilities, penalties and causes of action, asserted in the Action, and all claims that could have been asserted in the Action arising from the same alleged facts in the complaints, including causes of action for or based on (1) failure to pay minimum wages for all hours worked; (2) failure to pay overtime compensation; (3) failure to provide meal periods and pay meal period premiums; (4) failure to provide rest periods and pay rest period premiums; (5) failure to timely pay wages during employment and all final wages; (6) failure to provide accurate itemized wage statements; and all claims for attorneys' fees and costs based on the foregoing.

1.30    "Released PAGA Claims" means all claims for civil penalties under PAGA that were or could have been asserted in the Lawsuit based on the same alleged facts in the PAGA letter sent by Plaintiff to the LWDA, including but not limited to claims for violations of the California Labor Code for unpaid minimum wages, unpaid overtime wages, unpaid meal period premiums, unpaid rest period premiums, inaccurate wage statements, failure to keep accurate records, and failure to timely pay wages during employment or at termination.

1.31    "Released Parties" means Defendant, and all affiliated parties and entities, including all past and present affiliates, parents, subsidiaries, predecessors, owners, members, successors, shareholders, divisions, insurers, counsel, clients (Wal-Mart and Cisco), actual or

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6                          STIPULATION OF SETTLEMENT
Case No. 5:24-cv-02223-EJD

alleged joint employers, and each of these entities' past and present directors, officers, employees, partners, shareholders, members and representatives.

1.32    "Response Deadline" means forty-five (45) calendar days after the Settlement Administrator mails the Notice of Settlement to Settlement Class Members.  It shall be the last date on which Settlement Class Members may: (a) postmark any Opt-Out Request from the class portion of the Settlement, (b) postmark any written objection to the Settlement, and (c) postmark any Eligible Workweek or Eligible Pay Period Dispute.  The Response Deadline for Settlement Class Members to whom the Notice of Settlement is remailed after having been returned as undeliverable to the Settlement Administrator shall be fifty-five (55) calendar days after the Settlement Administrator's initial mailing of the Notice of Settlement to Settlement Class Members, or fourteen (14) calendar days after the re-mailing, whichever is later.

1.33    "Settlement Administration Costs" means the costs payable from the Gross Settlement Amount to the Settlement Administrator for administering this Settlement in accordance with the Settlement Administrator's responsibilities outlined in this Stipulation.

1.34    "Settlement Administrator" means ILYM Group, Inc., who shall be responsible for the administration of the Settlement, distribution of any amounts owed under this Settlement, and matters necessarily related thereto, pursuant to the terms of this Settlement, and subject to appointment by the Court.

1.35    "Settlement Class" or "Settlement Class Members" means all current and former California non-exempt employees of Defendant's Workplace Experiences line of business who worked at Wal-Mart and Cisco locations during the Class Settlement Period.

2.    **RECITALS**

2.1    **Background and Procedural History**

2.1.1    On February 13, 2024, Plaintiff submitted a notice letter to the LWDA under PAGA alleging violations of the California Labor Code on behalf of Defendant's non-exempt California employees.

2.1.2    On February 27, 2024, Plaintiff filed a Class Action Complaint in Santa Clara County Superior Court alleging causes of action for (1) violation of California Labor Code

§§ 510, 1194, and 1198 (failure to pay regular and overtime wages); (2) violation of California Labor Code §§ 226.7 and 512(a) (failure to provide complaint meal periods or pay premium compensation in lieu thereof); (3) violation of California Labor Code § 226.7 (failure to provide compliant rest periods or pay premium compensation in lieu thereof; (4) violation of California Labor Code §§ 201-203 (failure to pay wages timely upon termination); (5) violation of California Labor Code § 226(a) (failure to provide accurate itemized wage statements); and (6) violations of California Business & Professions Code §§ 17200, *et seq*.

2.1.3    On April 15, 2024, Defendant removed the Action to the Northern District of California.

2.1.4    On May 6, 2024, Plaintiff filed his First Amended Complaint.

2.1.5    On June 17, 2024, Plaintiff filed his Second Amended Complaint dismissing his cause of action for violation of California Business & Professions Code §§ 17200, *et seq*.

2.1.6    Following extensive formal discovery, the Parties mediated the Action on May 22, 2025 with experienced mediator Jill Manning and reached a settlement in principle.

2.2    **Benefits of Settlement**

2.2.1    Based on their own independent investigations and evaluations, Class Counsel is of the opinion that the Settlement with Defendant for the consideration and terms set forth herein is fair, reasonable, and adequate in light of all known facts and circumstances, and is in the best interests of the Settlement Class.  Class Counsel is also of the opinion that the total consideration and payment set forth in this Stipulation of Settlement is adequate in light of the uncertainties surrounding the risk of further litigation, the possibility of losing class certification, the possibility that the PAGA claim could be deemed unmanageable, and the defenses that Defendant has asserted and/or could assert as to the substantive merit of the claims.

2.2.2    Class Counsel has weighed the monetary benefit under the Settlement to the Settlement Class against the expenses and length of continued proceedings that would be necessary to prosecute the Action against Defendant through class certification, through manageability motions, summary judgment, trial and possible appeals.  Class Counsel has also

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

STIPULATION OF SETTLEMENT
Case No. 5:24-cv-02223-EJD

taken into account the uncertain outcome and risk of any litigation, especially in complex actions such as class and representative actions, as well as the difficulties and delay inherent in such litigation. As a result, Class Counsel has determined that the settlement set forth in this Stipulation of Settlement is in the best interests of the Settlement Class.

2.2.3    Defendant and the Released Parties specifically and generally deny any and all liability or wrongdoing of any sort with regard to the claims alleged, make no concessions or admissions of liability of any sort, and contend that for any purpose other than Settlement, the Action is not appropriate for class or representative action treatment. Nonetheless, Defendant has concluded that further conduct of the Action would be protracted, distracting, and expensive, and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. Defendant has also taken into account the uncertainty and risks inherent in any litigation. Defendant has therefore determined that it is desirable and beneficial to it to settle the Action in the manner and upon the terms and conditions set forth in this Stipulation.

2.2.4    Neither this Stipulation of Settlement, nor any document referred to in it, nor any actions taken pursuant to this Stipulation of Settlement, is or should be construed as an admission by Defendant of any fault, wrongdoing, or liability whatsoever. Nor should the Stipulation of Settlement be construed as an admission that Plaintiff could meet any of the class action requirements or that any PAGA claim would be manageable. There has been no final determination by any court as to the merits of the claims asserted by Plaintiff against Defendant, as to whether a class action should be certified, or that any PAGA claim is manageable.

3.    **SETTLEMENT TERMS**

3.1    **Amendment of the Pleadings for Settlement.**  In connection with approval of this Settlement, and following execution of this Stipulation, the Parties will stipulate to the filing of a Third Amended Complaint that adds a claim for civil penalties under PAGA. In the event that the Settlement is not approved or for whatever reason does not become effective, the Third Amended Complaint will be stricken and the Second Amended Complaint will be the operative pleading.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9    STIPULATION OF SETTLEMENT
Case No. 5:24-cv-02223-EJD

3.2     **Conditional Class Certification.**  The Parties stipulate, for settlement purposes only, to the certification by the Court of the Settlement Class.  If, for any reason, the Court does not approve this Stipulation, fails to enter the Judgment, or if this Stipulation is terminated for any other reason, the Settlement Class will be decertified and Defendant shall, and hereby does, retain the right to dispute the appropriateness of class certification.

3.3     **Gross Settlement Amount.**  Defendant shall pay a non-reversionary amount not to exceed Two Hundred and Five Thousand Dollars and Zero Cents ($205,000.00) as the Gross Settlement Amount to resolve the Action on a class and representative basis.  The Gross Settlement Amount shall be used to pay, as approved by the Court, Class Counsel's attorneys' fees and costs, Enhancement Award, Settlement Administration Costs, the PAGA Payment to the LWDA and the PAGA Members, and the Individual Settlement Payments to the Participating Class Members.  Notwithstanding the foregoing, in addition to the Gross Settlement Amount, Defendant will pay the employer's portion of payroll taxes, including FICA and FUTA, on the portion of each Individual Settlement Payment allocated as unpaid wages.

3.4     **Allocation of Gross Settlement Amount**

3.4.1     Class Representative Enhancement Award:  The Class Representative's Enhancement Award, which is in addition to the Class Representative's Individual Settlement Payment from the Net Settlement Amount and Individual PAGA Payment, will, subject to Court approval, be paid out of the Gross Settlement Amount and will not exceed Seven Thousand Five Hundred Dollars and Zero Cents ($7,500.00) for his service and assistance to the Class.  Any amount of the Class Representative's Enhancement Award that is not awarded by the Court shall be added to the Net Settlement Amount.

3.4.2     Attorneys' Fees and Costs:  Class Counsel may apply to the Court for an award of reasonable attorneys' fees not to exceed one third of the Gross Settlement Amount, Sixty-Eight Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($68,333.33), and will seek an award of costs for reimbursement of Class Counsel's out-of-pocket costs incurred in the Action up to an additional Two Thousand Five Hundred Dollars and Zero Cents ($2,500.00) to be paid out of the Gross Settlement Amount.  Defendant reserves the right to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

STIPULATION OF SETTLEMENT
Case No. 5:24-cv-02223-EJD

challenge Class Counsel's request for fees and costs if the requests exceed the parameters established by this Stipulation. The Settlement Administrator shall issue IRS Forms 1099 to Class Counsel for the payments made pursuant to this section. Class Counsel shall be solely and legally responsible for paying any and all applicable taxes on the fees and costs award. Any amount of Class Counsel's requested fees and costs that is not awarded by the Court shall be added to the Net Settlement Amount. Neither Class Counsel nor any other attorneys acting for, or purporting to act for, the Settlement Class, Settlement Class Members, or Plaintiff, may recover or seek to recover any amounts for fees, costs, or disbursements from the Defendant or the Released Parties except as expressly provided herein.

3.4.3    Settlement Administrator Costs: The Settlement Administration Costs incurred by the Settlement Administrator as a result of the procedures and processes expressly required by this Stipulation shall be paid out of the Gross Settlement Amount and are estimated not to exceed Seven Thousand Five Hundred Dollars and Zero Cents ($7,500.00). Under no circumstances will Defendant be required to contribute additional funds, above and in addition to the Gross Settlement Amount, to cover any unexpected Settlement Administration Costs. The Settlement Administration Costs shall include: all costs of administering the Settlement, including all tax document preparation, custodial fees, and accounting fees incurred by the Settlement Administrator; all costs and fees associated with establishing and maintaining a Qualified Settlement Fund; all costs and fees associated with preparing, issuing and mailing the Notice of Settlement and other correspondence to Settlement Class Members; all costs and fees associated with communicating with Settlement Class Members, Class Counsel, and Defendant's Counsel; all costs and fees associated with computing, processing, reviewing, and paying the payments due under this Stipulation, and resolving disputed claims; all costs and fees associated with calculating tax withholdings and payroll taxes, making related payment to federal and state tax authorities, and issuing tax forms relating to payments made under the Settlement; all costs and fees associated with preparing any tax returns and any other filings required by any governmental taxing authority or agency; all costs and fees associated with preparing any other notices, reports, or filings to be prepared in the course of administering payments due under this Stipulation; and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11                           STIPULATION OF SETTLEMENT
                             Case No. 5:24-cv-02223-EJD

any other costs and fees incurred and/or charged by the Settlement Administrator in connection with the execution of its duties under this Stipulation.  Any amount of Settlement Administration Costs that is not awarded by the Court shall be added to the Net Settlement Amount.

3.4.4    Individual Settlement Payments to Participating Class Members:  Each Participating Class Member will be entitled to receive an Individual Settlement Payment, which will be paid out of the Net Settlement Amount.  The amount of each Individual Settlement Payment will be calculated on a pro rata basis, based on the Eligible Workweeks each Participating Class Member worked during the Class Settlement Period using the following formula: Individual Settlement Payment = individual Eligible Workweeks ÷ all Participating Class Member Eligible Workweeks × Net Settlement Amount.  There is no need for a Participating Settlement Class Member to submit a claim form in order to be eligible for and to receive an Individual Settlement Payment.  To determine each Settlement Class Member's estimated "Individual Settlement Payment" to be included in the Class Notice, the Settlement Administrator will use the following formula: estimated Individual Settlement Payment = individual Eligible Workweeks ÷ all Settlement Class Member Eligible Workweeks × estimated Net Settlement Amount.  The Parties recognize that the Individual Settlement Payments to be paid to Participating Class Members reflect settlement of a dispute over claimed wages, interest, penalties, and other alleged damages.

3.4.5    PAGA Payment:  A total amount of Ten Thousand Two Hundred and Fifty Dollars and Zero Cents ($10,250.00) from the Gross Settlement Amount will be allocated as the PAGA Payment to be paid as penalties under PAGA, seventy-five percent (75%) of this amount ($7,687.50) will be the LWDA PAGA Payment to paid to the LWDA and the remaining twenty-five (25%) of this amount ($2,562.50) shall be distributed to the PAGA Members as Individual PAGA Payments.  Any portion of the PAGA Payment not approved by the Court shall be added to the Net Settlement Amount and any additional amount ordered by the Court shall be paid from the Gross Settlement Amount.  The 25% of the PAGA Payment to be distributed to the PAGA Members as Individual PAGA Payments and shall be distributed based on a pro rata share based

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12                          STIPULATION OF SETTLEMENT
                            Case No. 5:24-cv-02223-EJD

on the number of Eligible Pay Periods each PAGA Member worked during the PAGA Settlement Period.

### 3.5 **Taxation**

3.5.1    Tax Treatment of Individual Settlement Payments.  All Individual Settlement Payments to Participating Class Members shall be allocated as follows for tax purposes:  33% of each Individual Settlement Payment reflects compromise of claims for alleged unpaid wages; 67% of each Individual Settlement Payment reflects compromise of a claim for interest and penalties.  The portion of the Individual Settlement Payment attributable to unpaid wages will be subject to regular and/or applicable payroll and income tax withholdings (for the employee portion only), and will be reported on an IRS Form W-2 to the extent required by law. The Settlement Administrator shall make appropriate tax withholdings from the portion of each Individual Settlement Payment designated as unpaid wages, and shall pay the employer portion of payroll taxes with funds separate from the Gross Settlement Amount to be furnished by Defendant.  Participating Class Members will be responsible for paying all other taxes due on their Individual Settlement Payments.  Other than as set forth above, the Settlement Administrator will not make any deductions, withholdings, or additional payments, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments to the extent permitted by law, or charity withholdings, from or with respect to the Individual Settlement Payments, and entry of the Order of Final Approval by the Court shall be deemed authority not to make any such deductions, withholdings, or additional payments.

3.5.2    Tax Treatment of Individual PAGA Payments:  All Individual PAGA Payments shall be allocated as 100% penalties, for which a 1099 will be issued if required by law. PAGA Members will be responsible for paying all taxes due on their Individual PAGA Payments. The Settlement Administrator will not make any deductions, withholdings, or additional payments, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments to the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13                  STIPULATION OF SETTLEMENT
Case No. 5:24-cv-02223-EJD

extent permitted by law, or charity withholdings, from or with respect to the Individual PAGA Payments.

3.5.3    Circular 230 Disclaimer:  Each Party to this Stipulation (for purposes of this section, the "acknowledging party" and each Party to this Stipulation other than the acknowledging party, an "other party") acknowledges and agrees that (1) no provision of this Stipulation, and no written communication or disclosure between or among the Parties or their attorneys and other advisers, is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended); (2) the acknowledging party (a) has relied exclusively upon his, her, or its own, independent legal and tax counsel for advice (including tax advice) in connection with this Stipulation, (b) has not entered into this Stipulation based upon the recommendation of any other party or any attorney or advisor to any other party, and (c) is not entitled to rely upon any communication or disclosure by any attorney or adviser to any other party to avoid any tax penalty that may be imposed on the acknowledging party; and (3) no attorney or adviser to any other party has imposed any limitation that protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by the acknowledging party of the tax treatment or tax structure of any transaction, including any transaction contemplated by this Stipulation.

3.6    **No Effect on Employee Benefits.**  Neither the Settlement nor any amounts paid under the Settlement will modify any previously credited hours or service under any employee benefit plan, policy, or bonus program sponsored by the Released Parties.  Such amounts will not form the basis for additional contributions to, benefits under, or any other monetary entitlement under the Released Parties' sponsored benefit plans, policies, or bonus programs.  The payments made under the terms of this Stipulation shall not be applied retroactively, currently, or on a going forward basis, as salary, earnings, wages, or any other form of compensation for the purposes of the Released Parties' benefit plans, policies, or bonus programs.  The Released Parties retain the right to modify the language of their benefit plans, policies and bonus programs

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14                     STIPULATION OF SETTLEMENT
                       Case No. 5:24-cv-02223-EJD

to effectuate this intent, and to make clear that any amounts paid pursuant to this Settlement are not for "hours worked," "hours paid," "hours of service," or any similar measuring term as defined by applicable plans, policies and bonus programs for purposes of eligibility, vesting, benefit accrual, or any other purpose, and that additional contributions or benefits are not required by this Stipulation of Settlement.

### 3.7 Releases

3.7.1 <u>Class Representative's Release</u>.  Upon Final Approval, the Class Representative shall be deemed to have fully, finally, and forever released the Released Parties from all Class Representative's Released Claims through the Final Approval Date.  The Class Representative may hereafter discover claims or facts in addition to, or different from, those which he now knows or believes to exist, but Class Representative expressly agrees to fully, finally and forever settle and release any and all claims against the Released Parties, known or unknown, suspected or unsuspected, which exist or may exist on behalf of or against the other at the time of execution of this Stipulation.  The Class Representative shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he may otherwise have had relating to the Class Representative's Released Claims pursuant to Section 1542 of the California Civil Code, which provides as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Notwithstanding the foregoing, Class Representative does not waive or release any claim which cannot be waived or released by private agreement or law.  Further, nothing in this Stipulation shall prevent Class Representative from filing a charge or complaint with, or from participating in, an investigation or proceeding conducted by the United States Security and Exchange Commission ("SEC"), the Occupational Safety and Health Administration ("OSHA"), the United States Equal Employment Opportunity Commission ("EEOC"), the California Civil Rights

Department ("CRD"), formerly known as the Department of Fair Employment and Housing ("DFEH"), the National Labor Relations Board ("NLRB") or any other federal, state or local agency charged with the enforcement of any employment or other applicable laws. Class Representative, however, understand that by signing this Stipulation, he waives the right to recover any damages or to receive other relief in any claim or suit brought by or through the EEOC, the CRD/DFEH or any other state or local deferral agency on their behalf to the fullest extent permitted by law, but expressly excluding any monetary award or other relief available from the SEC/OSHA, including an SEC/OSHA whistleblower award, or other awards or relief that may not lawfully be waived.

3.7.2    Participating Class Member Release. As of the Effective Date, all Participating Class Members fully and finally release the Released Parties from the Released Class Claims that arose during the Class Settlement Period.

3.7.3    PAGA Member Release. As of the Effective Date, Plaintiff, as representative of the State of California and on behalf of the LWDA and as representative of the PAGA Members, fully and finally releases the Released Parties from the Released PAGA Claims for the PAGA Settlement Period.

4.    **APPROVAL OF SETTLEMENT, NOTICE TO CLASS AND ADMINISTRATION**

    4.1    **Preliminary Approval**

    4.1.1    Class Counsel shall submit to the Court this Stipulation of Settlement and exhibits thereto for preliminary approval by the Court. Class Counsel will prepare and file the motion for preliminary approval and supporting papers for the Court, subject to Defendant's prior review and approval. Plaintiff will provide the motion for preliminary approval to Defendant for its review and approval at least seven (7) calendar days before filing.

    4.1.2    Pursuant to California Labor Code § 2699(l), concurrently with the filing of the motion for preliminary approval, Plaintiff will provide notice of the proposed Settlement to the LWDA.

    4.1.3    Within ten (10) days of Plaintiff's filing of the Motion for Preliminary Approval, Defendant shall send notice of settlement pursuant to 15 U.S.C. § 1715.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16                    STIPULATION OF SETTLEMENT
                     Case No. 5:24-cv-02223-EJD

4.1.4    The Court's preliminary approval of this Settlement shall be embodied in an order certifying the Class for settlement purposes only, preliminarily approving the Settlement and providing for Notice of Settlement to be mailed to the Class in materially the same format attached hereto as Exhibit 1, and setting the date for the Final Approval Hearing.  The Notice of Settlement shall advise Settlement Class Members of their options, which include filing an Opt-Out Request to the class settlement; filing an objection to the Settlement and receiving an Individual Settlement Payment and an Individual PAGA Payment (if applicable); or taking no action and receiving an Individual Settlement Payment and an Individual PAGA Payment (if applicable).

4.2    **Notice**

4.2.1    Delivery of Class Data:  No later than twenty-one (21) calendar days after the Preliminary Approval Date, Defendant shall provide the Class Data to the Settlement Administrator.  The Settlement Administrator shall maintain the Class Data, and all data contained within the Class Data, as private and confidential and shall not disclose such data to any persons or entities, unless otherwise required by law.  The information in the Class Data is being supplied solely for purposes of the administration of the settlement and cannot be used by the Settlement Administrator or any agent or representative of the Settlement Administrator for any other purpose.  Upon receipt of the Class Data, the Settlement Administrator shall check with the U.S. Postal Service National Change of Address Database and update any addresses for the Settlement Class Members.

4.2.2    Notice By First-Class Mail.  Within fourteen (14) calendar days of the receipt of the Class Data, the Settlement Administrator will send via United States first class mail the Notice of Settlement to the Settlement Class Members in both English and Spanish.  If any Notice of Settlement is returned to the Settlement Administrator as undeliverable, the Settlement Administrator shall run a skip-trace using that Settlement Class Member's social security number within three (3) court days of receiving the undeliverable notice in an effort to attempt to ascertain the current address of the Settlement Class Member.  If such an address(es) is ascertained, the Settlement Administrator shall re-mail the Notice of Settlement within three (3)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17    STIPULATION OF SETTLEMENT
Case No. 5:24-cv-02223-EJD

court days of obtaining the skip-trace results. If alternative addresses are obtained for a Settlement Class Member, the Settlement Administrator shall send the Notice of Settlement to up to two (2) alternative addresses.

4.2.3 Settlement Administration Website. The Settlement Administrator will also create a website for the Settlement, which will allow Class Members to view the class notice (in generic form), this Settlement Agreement, and all papers filed by Class Counsel to obtain preliminary and final approval of the Settlement Agreement. The Settlement Administrator will provide Class Counsel and Defendant's Counsel with a preview of the proposed website and the URL must be approved by Defendant before it is registered. Class Counsel and Defendant's Counsel must approve the website before it goes live and also must approve any modifications to the website. The Settlement Administrator shall create a toll-free telephone number to field telephone inquiries from Class Members during the notice and settlement administration periods. The Settlement Administrator will be directed to take the website and call center down after the one hundred and eighty (180) calendar days check cashing period.

4.3 **Opt-Out Requests**

4.3.1 Settlement Class Members, except for the Class Representative, will have until the Response Deadline within which to opt out of the class portion of this Settlement; however, exercising this option has no effect on the PAGA portion of this settlement. PAGA Members will be mailed an Individual PAGA Payment and be bound by the release of the Released PAGA Claims regardless of whether they opt out of the class settlement. Settlement Class Members who want to opt out must timely submit a signed and dated written request to be excluded from the class portion of the Settlement to the Settlement Administrator ("Opt-Out Request"). The Opt-Out Request must be postmarked on or before the Response Deadline, include the case name and number, the Settlement Class Member's name, address, and last four of their social security number, must be signed by the Settlement Class Member, and must reasonably communicate the Settlement Class Member's election to be excluded from the class Settlement.

4.3.2    Settlement Class Members who do not timely submit an executed Opt-Out Request shall be deemed a Participating Class Member and bound by this Settlement including the Participating Class Member Release.  Settlement Class Members who timely submit an executed Opt-Out Request will not be bound by the Participating Class Member Release and will not receive an Individual Settlement Payment.  The Notice of Settlement shall advise Settlement Class Members of their ability to opt-out of the class portion of the Settlement and of the consequences thereof, and further inform them that they cannot opt out of the PAGA settlement. Neither the Parties nor any of their counsel will solicit any Settlement Class Member to submit an Opt-Out Request.

4.3.3    If a Settlement Class Member submits both an Opt-Out Request and an Objection within the Response Deadline, then the Opt-Out Request will be deemed valid and the Objection invalid and the individual will not be deemed a Participating Class Member.

4.4    **Objections.**  Participating Class Members, except for the Class Representative, may object to the Settlement in person at the Final Approval Hearing and/or in writing. Participating Class Members, except for the Class Representative, will have until the Response Deadline to file a written objection to the Court.  Only Settlement Class Members who have not filed an Opt-Out Request (i.e., Participating Class Members) may object to the Settlement.  The written objection should be mailed or filed with the Court, include the case number and name of this case, state the Participating Class Member's name and address and describe the reason(s) why the Participating Class Member objects to the Settlement and include or attach any documents upon which the objection is based.  The Parties and their counsel agree that they will not solicit, encourage, counsel or advise any individual to object to the Settlement.

4.5    **Eligible Workweek and Eligible Pay Period Disputes.**  Participating Class Members and PAGA Members may dispute their Eligible Workweeks and Eligible Pay Periods if they believe they worked for more Eligible Workweeks or Eligible Pay Periods in the Class Settlement Period or PAGA Settlement Period than stated on their Notice of Settlement. Participating Class Members and PAGA Members may do this by submitting information to the Settlement Administrator in writing no later than the Response Deadline.  The Settlement

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19    STIPULATION OF SETTLEMENT
Case No. 5:24-cv-02223-EJD

Administrator will jointly work with Class Counsel and Defendant's Counsel to resolve the dispute in good faith. If the Parties cannot agree on the Eligible Workweeks or Eligible Pay Periods to be credited to that Participating Class Member or PAGA Member, the Court shall make the final decision based on the information presented by the Class Member or the PAGA Member and the Parties.

4.6 **Certification Reports by the Settlement Administrator.** The Settlement Administrator will, on a weekly basis during and for a reasonable period following distribution of the Notice of Settlement, provide updates to Class Counsel and Defendant's Counsel as to the number of persons in the Settlement Class who submitted (i) valid Opt-Out Requests; (ii) written Objections, and (iii) Eligible Workweeks or Eligible Pay Period disputes. Copies of all Opt-Out Requests, Objections, and disputes shall be provided to the Parties' counsel within two (2) court days of receipt by the Settlement Administrator. To the extent practicable, the weekly updates shall also provide updated data on the extent of Notices of Settlement that are returned undeliverable and any re-mailing efforts. The Settlement Administrator will provide the Parties with a declaration setting forth the results of the settlement administration no later than five (5) court days after the end of the Opt-Out period. The Settlement Administrator will provide a draft declaration for review and comment prior to finalizing it.

4.7 **Nullification of Settlement.** Defendant shall have the sole right to void and withdraw from this Settlement if at any time prior to the Final Approval Date: (a) two percent (2%) or more of all Settlement Class Members submit timely and valid Opt-Out Requests; or (b) the Settlement is construed in such a fashion that Defendant would be required to pay more than the Gross Settlement Amount, exclusive of Defendant's share of the employer payroll taxes; or (c) the Court does not certify the Settlement Class, or does not certify a class releasing all of the Released Class Claims defined in this Stipulation, or does not approve the PAGA settlement including the release of the Released PAGA Claims, or otherwise makes an order inconsistent with any of the material terms (as determined by Defendant) of this Settlement; or (d) any pending litigation or litigation filed prior to the Final Approval Date in any way prevents the

Settlement from being preliminarily or finally approved by the Court; or (e) Plaintiff or Class Counsel materially breach the Settlement.

4.8    **Final Approval and Entry of Final Judgment**

4.8.1    Prior to the Final Approval Hearing, Plaintiff will move the Court for entry of an "Order of Final Approval" and associated entry of Judgment: (a) certifying the Settlement Class for Settlement purposes only, (b) finding the Settlement fair, reasonable, adequate, and in the best interests of the Participating Class Members, (c) approving the PAGA Payment to the LWDA and the PAGA Members; (d) approving Class Counsel's application for an award of attorneys' fees and costs, (e) approving the Class Representative's application for an Enhancement Award, (f) approving the payment of reasonable Settlement Administration Costs, and (g) releasing and barring any further Released Class Claims by Participating Class Members and Released PAGA Claims by or on behalf of the PAGA Members.  Plaintiff will provide the motion for final approval to Defendant for its review and approval at least seven (7) calendar days before filing.  The Parties and their respective counsel shall make all reasonable efforts to secure entry of the Order of Final Approval.  The proposed Order of Final Approval and the associated proposed Judgment shall be filed with the Court with the motion for final approval, or as otherwise directed by the Court.

4.8.2    Class Representative and Class Counsel shall be responsible for justifying the amount of the Enhancement Award and attorneys' fees and costs to the Court, and they agree to submit, as appropriate, the necessary materials to justify these payments.  If the Court (or any appellate court) awards less than the amount requested for attorneys' fees and/or costs, or less than the amount requested for the Enhancement Award for the Class Representative, only the awarded amounts shall be paid and shall constitute satisfaction of the obligations of Defendant under this Stipulation.

4.8.3    If an appeal results in an order materially modifying, setting aside, or vacating any portion of the Stipulation, with the exception of any modification of the amount of attorneys' fees or costs to be paid to Class Counsel, or the amount of the Enhancement Award paid to the Class Representative, each party adversely impacted by the order shall have the right

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21    STIPULATION OF SETTLEMENT
Case No. 5:24-cv-02223-EJD

to treat such order as an event preventing Final Approval. To exercise this right, the party must inform the other party and the Settlement Administrator, in writing, of the exercise of this right, within ten (10) calendar days of receiving notice of any order modifying, setting aside, or vacating any portion of the Stipulation. Before any Party elects to exercise its right to treat such order as an event permanently preventing Final Approval, that Party must meet and confer in good faith with the other Party to determine if an agreement can be reached modifying this Settlement to the mutual satisfaction of the Parties.

4.8.4    If the Final Approval does not occur, or if this Stipulation is terminated or canceled pursuant to its terms, the Parties to this Stipulation shall be deemed to have reverted to their respective status as of the date and time immediately prior to the execution of this Stipulation. In such an event, if the Stipulation is not approved by the Court substantially in the form agreed to by the Parties, or if the Settlement set forth in the Stipulation is terminated, cancelled, declared void, or fails to become effective in accordance with its terms, or if the Judgment does not become a Final Judgment, or if the Final Approval Date does not occur, this Stipulation (except for those provisions relating to non-admission, denial of liability set forth herein, and the confidentiality agreements entered into by the Parties) shall be deemed null and void, its terms and provisions shall have no further force and effect and shall not be used in this Action or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. Notwithstanding any other provision of this Stipulation, no order of the Court, or modification or reversal on appeal of any order of the Court, reducing the amount of any attorneys' fees or costs to be paid by Defendant to Class Counsel, or reducing the amount of the Enhancement Award paid to the Class Representative, shall constitute grounds for cancellation or termination of the Stipulation, or grounds for limiting any other provision of the Judgment.

4.9    **Funding and Distribution of the Settlement Proceeds**

4.9.1    Within twenty-one (21) calendar days after the Effective Date or within seven (7) calendar days of the Settlement Administrator providing all information necessary for Defendant to transfer funds to the Qualified Settlement Fund, whichever is later, Defendant shall

pay the Gross Settlement Amount into the Qualified Settlement Fund set up, held, and controlled by the Settlement Administrator.

4.9.2   Within fifteen (15) calendar days after Defendant funds the Qualified Settlement Fund, the Settlement Administrator shall issue Individual Settlement Payments to Participating Class Members, Individual PAGA Payments to the PAGA Members, the LWDA PAGA Payment to the LWDA, the Court-approved attorneys' fees and costs to Class Counsel, and the court-approved Enhancement Award to the Class Representative.

4.9.3   The Settlement Administrator shall keep counsel for the Parties apprised of all distributions from the Qualified Settlement Account and upon completion of administration of that portion of the Settlement, the Settlement Administrator shall provide written certification, under penalty of perjury, of such completion to the Court and counsel for all Parties.

4.9.4   Upon completion of administration of the Settlement, the Settlement Administrator shall provide written certification, under penalty of perjury, of such completion to the Court, Class Counsel and Defendant's Counsel.

4.10   **Uncashed Checks.**  After one hundred and eighty (180) calendar days of issuance, funds from undeposited Individual Settlement Payment and Individual PAGA Payment checks will be held by the Settlement Administrator.  Even if a Participating Class Member or PAGA Member does not cash or deposit his or her settlement payment check(s) within one-hundred eighty (180) calendar days of issuance, the Stipulation of Settlement, including its release, will be binding on that Participating Class Member or PAGA Member.  After the 180 days has expired, the Settlement Administrator shall void the uncashed settlement checks and the amount of the uncashed settlement payments shall be transmitted to the State of California, to be held and disposed of by the Controller in accordance with California's Unclaimed Property Law for the benefit of the Participating Class Members and PAGA Members who did not cash the settlement checks until such time that they claim their property.  The Parties agree that this disposition results in no "unpaid residue," as the entire Net Settlement Amount will be paid out to Participating Class Members, whether or not they timely cash their Individual Settlement Payments.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23                    STIPULATION OF SETTLEMENT
Case No. 5:24-cv-02223-EJD

5.      **MISCELLANEOUS PROVISIONS**

5.1     **This Settlement is Fair, Adequate and Reasonable**.  The Parties believe this Settlement is a fair, adequate and reasonable settlement of the Action and have arrived at this Settlement in arms-length negotiations, taking into account all relevant factors, present and potential.

5.2     **Invalidity of Any Provision**.  Before declaring any provision of this Stipulation invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Stipulation valid and enforceable.  Should the Court deem any clause or provision of this Stipulation be invalid, illegal, or unenforceable, it shall first attempt to modify or reform it as minimally necessary to be valid, lawful, and enforceable.

5.3     **No Admission.**  Neither the acceptance nor the performance by Defendant of the terms of this Stipulation, nor any of the related negotiations or proceedings, is or shall be claimed to be, construed as, or deemed to be, an admission by Defendant of the truth of any of the allegations in the Complaint, the representative character of the Action, the validity of any of the claims that were or could have been asserted by Plaintiff, Settlement Class Members and/or PAGA Members in the Action, or of any liability or guilt of Defendant or the Released Parties in the Action.  Nothing in this Stipulation shall be construed to be or deemed an admission by Defendant of any liability, culpability, negligence, or wrongdoing toward Plaintiff, the Settlement Class Members, or any other person, and Defendant specifically disclaims any liability, culpability, negligence, or wrongdoing toward Plaintiff, the Settlement Class Members, PAGA Members and any other person.  Each of the Parties has entered into this Stipulation with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies.

5.4     **Cooperation.**  The Parties agree to cooperate fully with one another to accomplish and implement the terms of this Settlement.  Such cooperation shall include, but not be limited to, execution of such other documents and the taking of such other action as may reasonably be necessary to fulfill the terms of this Settlement.  The Parties to this Settlement shall exercise

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24                    STIPULATION OF SETTLEMENT
                     Case No. 5:24-cv-02223-EJD

reasonable efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by Court order, or otherwise, to effectuate this Settlement and the terms set forth herein.

5.5 **Privacy of Documents and Information.** Plaintiff and Class Counsel agree that none of the documents and information provided to them by Defendant in connection with the Action and this Settlement shall be used for any purpose (including on any mailing lists or in any other litigation) other than this Settlement of the Action.

5.6 **Notices.** Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States certified mail, return receipt requested, addressed as follows:

**To the Class Counsel:**

Ronald H. Bae
Olivia D. Scharrer
Carson M. Turner
Aequitas Legal Group
1156 E. Green Street, Suite 200
Pasadena, California 91106

**To Defendant:**

Sarah Zenewicz
Michelle Quach
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, California 94105-1126

5.7 **Drafting**. The Parties hereto agree that the terms and conditions of this Stipulation of Settlement are the result of lengthy, intensive, arm's-length negotiations between the Parties and that this Stipulation shall not be construed in favor of or against any party by reason of the extent to which any party or its counsel participated in the drafting of this Stipulation.

5.8 **Publicity.** Neither Plaintiff nor Plaintiff's counsel shall issue any press release or announcement of any kind related in any way to the Settlement. Plaintiff and Plaintiff's counsel agree that, prior to filing a motion for preliminary approval of the settlement, they will keep the

terms of the settlement confidential except for purposes of communicating with Plaintiff only. Plaintiff understands that prior to the filing of a motion for preliminary approval, the Settlement is confidential and agrees to keep it confidential.  From and after preliminary approval of the settlement, Plaintiff and Plaintiff's counsel may: (1) as required by law; (2) as required under the terms of the settlement; or (3) as required under counsel's duties and responsibilities as class counsel, communicate regarding the specific terms of the settlement.  In all other cases, Plaintiff and Plaintiff's counsel agrees to limit their statements regarding the terms of the settlement, whether oral, written or electronic (including the world wide web), to say the Class Action has been resolved and that Plaintiff and Plaintiff's counsel are satisfied with the settlement terms. Nothing in this Paragraph is intended to interfere with Plaintiff's counsel's duties and obligations to faithfully discharge their duties as class counsel, including but not limited to, communicating with Settlement Class Members regarding the settlement, and nothing shall prohibit Plaintiff's counsel from referring to the settlement in adequacy of counsel declarations or related court filings.

5.9    **No Exclusion by Class Representative.**  The Class Representative, by signing this Stipulation, is bound by the terms herein and further agrees not to request to be excluded from the Settlement and not to object to any terms of this Stipulation.  Any such request for exclusion or objection shall therefore be void and of no force or effect.  Defendant, Class Counsel, and the Class Representative waive their rights to file an appeal, writ, or any challenge whatsoever to an Order of Final Approval or Judgment or to the terms of this Stipulation, and such waiver includes the right to appeal any award or reduction in the awards of attorneys' fees, costs or the Enhancement Award.  However, either Party may appeal in the event an objector's objection is upheld by the trial court.

5.10    **Computation of Time.**  If the prescribed time period in which to complete the required or permitted action expires on a Saturday, Sunday or federal holiday, such time period shall be continued to the following business day.

5.11    **Modification.**  This Stipulation may not be changed, altered, or modified, except in writing signed by the Parties hereto and approved by the Court.  This Stipulation may not be

discharged except by performance in accordance with its terms or by a writing used by the Parties hereto.

5.12    **Binding on Successors.**  This Stipulation shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors, and assigns.

5.13    **Execution in Counterparts.**  This Stipulation shall become effective upon its execution by all of the undersigned.  The Parties may execute this Stipulation in counterparts, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.14    **Jurisdiction.**  The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Stipulation, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.  Any action to enforce this Stipulation shall be commenced and maintained only in the Court.

5.15    **Headings.**  Paragraph titles or captions contained in the Stipulation are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Stipulation, or any provision thereof.

IN WITNESS WHEREOF, this Stipulation of Settlement is executed by the Parties and their duly authorized attorneys, as of the day and year herein set forth.

**AGREED AND UNDERSTOOD.**

Dated: _____, 2025

_____
Angel Correa

ARAMARK SERVICES, INC.

Dated: _____October 8, 2025_____, 2025

_____
Tracy Parola
Vice President and Assistant General Counsel

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

27    STIPULATION OF SETTLEMENT
Case No. 5:24-cv-02223-EJD

**APPROVED AS TO FORM:**

AEQUITAS LEGAL GROUP

Dated: _____, 2025          By: _____

                                              Ronald H. Bae
                                              Olivia D. Scharrer
                                              Carson M. Turner
                                      Counsel for Plaintiff Angel Correa

MORGAN, LEWIS & BOCKIUS LLP

Dated: October 8, 2025               By: _____

                                              Sarah Zenewicz
                                              Michelle Quach
                                      Counsel for Defendant Aramark Services, Inc.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28                    STIPULATION OF SETTLEMENT
                      Case No. 5:24-cv-02223-EJD

discharged except by performance in accordance with its terms or by a writing used by the Parties hereto.

5.12    **Binding on Successors.**  This Stipulation shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors, and assigns.

5.13    **Execution in Counterparts.**  This Stipulation shall become effective upon its execution by all of the undersigned.  The Parties may execute this Stipulation in counterparts, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.14    **Jurisdiction.**  The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Stipulation, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.  Any action to enforce this Stipulation shall be commenced and maintained only in the Court.

5.15    **Headings.**  Paragraph titles or captions contained in the Stipulation are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Stipulation, or any provision thereof.

IN WITNESS WHEREOF, this Stipulation of Settlement is executed by the Parties and their duly authorized attorneys, as of the day and year herein set forth.

**AGREED AND UNDERSTOOD.**

Dated:  _____10.1._____, 2025

_angel Luis Correa Martinez_
_____
Angel Correa

ARAMARK SERVICES, INC.

Dated:  _____, 2025

_____
Tracy Parola
Vice President and Assistant General Counsel

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

27    STIPULATION OF SETTLEMENT
Case No. 5:24-cv-02223-EJD

**APPROVED AS TO FORM:**

AEQUITAS LEGAL GROUP

Dated: _____October 2____, 2025    By: _____

Ronald H. Bae
Olivia D. Scharrer
Carson M. Turner
Counsel for Plaintiff Angel Correa

MORGAN, LEWIS & BOCKIUS LLP

Dated: _____, 2025    By: _____

Sarah Zenewicz
Michelle Quach
Counsel for Defendant Aramark Services, Inc.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28

STIPULATION OF SETTLEMENT
Case No. 5:24-cv-02223-EJD

# EXHIBIT 1

*Angel Correa v. Aramark Services, Inc.*
United States District Court for the Northern District of California, Case No. 5:24-cv-02223-EJD

*A court has authorized this notice.  This is not a solicitation.*
*This is not a lawsuit against you and you are not being sued.*
*Your legal rights are affected whether you act or do not act.*

## NOTICE OF SETTLEMENT

To:    Current and former California non-exempt employees of Aramark Services Inc.'s Workplace Experiences line of business who worked at Wal-Mart and Cisco locations at any time between February 27, 2021 through and including [END DATE] (the "Settlement Class").

**SETTLEMENT CLASS MEMBERS ARE ELIGIBLE TO RECEIVE PAYMENT FROM THE CLASS SETTLEMENT AND MAY ALSO BE ELIGIBLE TO RECEIVE PAYMENT FROM THE PAGA SETTLEMENT DESCRIBED IN THIS NOTICE.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | To receive a settlement payment, you do not need to do anything.  Your payment will be mailed to you, automatically, after the Court grants final approval to the settlement.  *You must, however, keep a current address on file with the Settlement Administrator to ensure receipt of your check.* |
| **CHANGE CONTACT AND ADDRESS INFORMATION** | Update your address with the Administrator to ensure your check is sent to the correct address. |
| **EXCLUDE YOURSELF FROM THE CLASS SETTLEMENT** | If you do not want to participate in the class settlement, you may exclude yourself ("opt out") of the class portion of the settlement.  If you exclude yourself from the class settlement, then you will not receive any payment from the Net Settlement Amount (defined below).  This is the only option that allows you to pursue your own claims (in your own lawsuit) against Defendant about the legal claims in this case.<br><br>However, if you are a PAGA Member (defined below), then even if you exclude yourself from the class settlement, you will still receive a portion of the PAGA settlement and will be bound by the release of PAGA claims. |
| **OBJECT IN WRITING OR AT THE HEARING** | Write to the Court if you think the settlement is not fair or appear at the Final Approval hearing to speak to the Court about why you think the settlement is not fair. |

- **YOUR RIGHTS AND OPTIONS – AND THE DEADLINES TO EXERCISE THEM – ARE EXPLAINED IN THIS NOTICE.**

- **DEFENDANT WILL NOT RETALIATE IN ANY MANNER AGAINST ANY SETTLEMENT CLASS MEMBER FOR PARTICIPATING OR NOT PARTICIPATING IN THIS SETTLEMENT.**

DB2/ 46979812.5

## BACKGROUND ON THE LAWSUIT

### 1.    What is this Class and PAGA Lawsuit and Settlement about?

On February 27, 2024, Plaintiff Angel Correa ("Plaintiff") initiated this "Action" by filing a Class Action Complaint in Santa Clara Superior Court, which Defendant Aramark Services, Inc. ("Defendant") subsequently removed to the United States District Court for the Northern District of California.  In the operative Third Amended Complaint, Plaintiff alleges causes of action for (1) violation of the California Labor Code §§ 510, 1194, and 1198 (failure to pay regular and overtime wages); (2) violation of California Labor Code §§ 226.7 and 512(a) (failure to provide complaint meal periods or pay premium compensation in lieu thereof); (3) violation of California Labor Code § 226.7 (failure to provide compliant rest periods or pay premium compensation in lieu thereof; (4) violation of California Labor Code §§ 201-203 (failure to pay wages timely upon termination); (5) violation of California Labor Code § 226(a) (failure to provide accurate itemized wage statements); and (6) civil penalties under the California Private Attorneys General Act ("PAGA") based on the same alleged violations of the California Labor Code.  Plaintiff seeks to represent Defendant's current and former California non-exempt employees in its Workplace Experiences line of business who worked at Wal-Mart and Cisco locations.

Defendant denies all allegations in the Action and contends that it has fully complied with federal, state and local wage and hour laws.  The settlement is not an admission of any wrongdoing by Defendant or an indication that any law was violated or that this case was suitable for class, collective or representative treatment.  Through arms-length negotiations with an experienced wage and hour mediator, the Parties reached a class and PAGA settlement subject to Court approval, which is summarized in this Notice.

### 2.    Why did I get this notice?

You received this Notice because Defendant's records identify you as a Settlement Class Member who worked at any time during the period from February 27, 2021, through and including [END DATE] (the "Class Settlement Period").  The settlement will resolve Settlement Class Members' claims, summarized above, during the Class Settlement Period.  The Settlement will also resolve claims for civil penalties under the PAGA.  You may also be a "PAGA Member" if you worked for Defendant during the period from February 27, 2023, through [END DATE] (the "PAGA Settlement Period").

The purpose of this notice is to explain the lawsuit, the pending Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.



The Court in charge of the case is the United States District Court for the Northern District of California, and the case is known as *Angel Correa v. Aramark Services, Inc.*, Case No. 5:24-cv-02223-EJD.  The Court held a hearing on _____, 2025, and District Judge Edward Davila preliminarily approved this Settlement and directed that you receive this Notice.  The Court will hold a Final Approval hearing concerning the Settlement on _____, 202_ at _____, in the Robert F. Peckham Federal Building & United States Courthouse, Courtroom 4—5th Floor, 280 South 1st Street, San Jose, CA 95113.  The Final Approval Hearing may be continued to another date without further notice.

### 3.    Why is there a settlement?

The Court has not decided in favor of Plaintiff or Defendant or made any decision as to whether this case could proceed on a class, collective or representative basis.  There was no trial.  Instead, both sides agreed to a no-fault settlement of the Lawsuit.

**4.**     <u>Who are the Attorneys for the Settlement Class and the PAGA Members?</u>

The Court has appointed Class Counsel to represent the Settlement Class and the PAGA Members in connection with this Settlement:

Ronald H. Bae
Olivia D. Scharrer
Carson M. Turner
AEQUITAS LEGAL GROUP, A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106
Telephone:  (213) 674-6080
Facsimile:   (213) 674-6081
rbae@AequitasLegalGroup.com
oscharrer@AequitasLegalGroup.com
cturner@AequitasLegalGroup.com

**THE TERMS OF THE SETTLEMENT**

**5.**     <u>What is the Settlement Amount?</u>

The proposed Settlement provides for a maximum payment of Two Hundred and Five Thousand Dollars and Zero Cents ($205,000.00) (referred to as the "Gross Settlement Amount"). From the Gross Settlement Amount, Class Counsel will apply to the Court for: attorneys' fees of Sixty-Eight Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($68,333.33) and up to Two Thousand Five Hundred Dollars and Zero Cents ($2,500.00) in recoverable costs incurred in this Action; Class Representative Enhancement Award of Seven Thousand Five Hundred Dollars and Zero Cents ($7,500.00) to Plaintiff for his work and efforts prosecuting this case, for undertaking the risks of payment of costs (in the event of an unsuccessful outcome of this Action) and for signing a general release of any claims they may have against Defendant; a Ten Thousand Two-Hundred Fifty Dollars and Zero Cents ($10,250) payment as settlement for claims for civil penalties under PAGA (the "PAGA Payment"), of which 75% will go to the California Labor Workforce Development Agency ("LWDA") and 25% will be divided among the PAGA Members as described below; and Settlement Administration Costs to ILYM Group, Inc., estimated at Seven Thousand Five Hundred Dollars and Zero Cents ($7,500.00). The exact amount of the attorneys' fees, litigation costs, Class Representative Enhancement Award, and Settlement Administration Costs will be determined by the Court at the Final Approval hearing. The remaining portion of the Gross Settlement Amount is the "Net Settlement Amount," which is currently estimated to be approximately One Hundred Eight Thousand Nine Hundred Sixteen Dollars and Sixty-Seven Cents ($108,916.67). The Net Settlement Amount will be apportioned and paid out as Individual Settlement Payments to the Participating Class Members, who are the Settlement Class Members who do not request to be excluded ("opt out") of the settlement**.**

**6.**     <u>How will the Individual Settlement Payments to Participating Class Members be calculated?</u>

Participating Class Members will receive Individual Settlement Payments from the Net Settlement Amount. **A claim form is not required to become a Participating Class Member.** Settlement Class Members who opt out of the class settlement will not become Participating Class Members and will not receive Individual Settlement Payments and will not be bound by the class portion of this Settlement.

Each Participating Class Member's Individual Settlement Payment will be a pro rata share of the Net Settlement Amount based on the number of workweeks that each Participating Class Member worked for Defendant during the Class Settlement Period (February 27, 2021, through and including [END DATE]) ("Eligible Workweeks") as a proportion of all Eligible Workweeks for all Participating Class Members.

All Individual Settlement Payments to Participating Class Members shall be allocated as follows for tax purposes: 33% of each Individual Settlement Payment reflects a compromise of claims for alleged unpaid wages; 67% of each Individual Settlement Payment reflects a compromise of claims for alleged interest and penalties. The portion of the Individual Settlement Payment attributable to unpaid wages will be subject to regular and/or applicable payroll and income tax withholdings and will be reported on an IRS Form W-2. Participating Class Members will receive an IRS Form 1099 for the portion of the Individual Settlement Payment attributable to alleged interest and penalties if required by law. Participating Class Members will be responsible for correctly characterizing the Individual Settlement Payment for tax purposes and paying taxes due, if any.

Your total estimated Eligible Workweeks is _____. Based on that, your anticipated approximate Individual Settlement Payment is _____.

**7.      How will the PAGA Payment be allocated to the LWDA and PAGA Members?**

The Parties will ask the Court to approve the Ten Thousand Two-Hundred Fifty Dollars and Zero Cents ($10,250.00) PAGA Payment in settlement of claims for civil penalties under PAGA. As required under PAGA, 75% of the PAGA Payment, or $7,687.50, will be paid to the LWDA. The remaining 25% of the PAGA Payment, or $2,562.50, will be distributed to the PAGA Members as Individual PAGA Payments.

Not all Settlement Class Members are PAGA Members who are entitled to an Individual PAGA Payment. If you are a PAGA Member, you are entitled to receive an Individual PAGA Payment; no claim form is required. Because PAGA Members cannot opt out of the PAGA settlement, if you are a PAGA Member and you opt out of the class settlement, you will still receive an Individual PAGA Payment and be bound by the PAGA settlement.

Each PAGA Member's Individual PAGA Payment will be a pro rata share of the 25% of the PAGA Payment to be distributed to PAGA Members. It will be based on the number of pay periods that each PAGA Member worked for Defendant during the PAGA Period (February 27, 2023, through [END DATE]) ("Eligible Pay Periods") as a proportion of all Eligible Pay Periods for all PAGA Members. For tax purposes, 100% of the Individual PAGA Payments will be allocated as penalties for which an IRS Form 1099, if required by law.

Your total estimated Eligible Pay Periods is _____. Based on that, your anticipated approximate Individual PAGA Payment is _____.

| HOW TO GET A PAYMENT |
| --- |

**8.      How can I get a settlement payment?**

If you do nothing, you will automatically receive your Individual Settlement Payment and Individual PAGA Payment (if any) after the Court approves the Settlement at a Final Approval Hearing. You must notify the Settlement Administrator of any change in your name, mailing address and/or telephone number if the information shown on this is not correct. **It is your responsibility to keep the Settlement Administrator informed of any change in your address. Settlement payments will be mailed to the last known address the Settlement Administrator has on file for you.** You can contact the Settlement Administrator by U.S. Mail, email or phone at _____ if you need to update contact information.

**9.      What do I do if I believe my Eligible Workweeks or Eligible Pay Periods are incorrect?**

If you believe the Eligible Workweeks and Eligible Pay Periods above are not correct, you may send a letter to the Settlement Administrator indicating what you believe to be the correct information. Your letter must be

postmarked on or before ⬛⬛⬛⬛⬛⬛, 2025. [*45 calendar days within mailing of Notice*].  You should include any documents or other information which supports what you believe support that you worked a different number of Eligible Workweeks or Eligible Pay Periods.

**Settlement checks should be cashed promptly upon receipt**.  Proceeds of checks which remain uncashed after 180 days from the date of issuance will be forwarded to the State of California Unclaimed Property Fund in the name of each Participating Class Member and/or PAGA Member who did not cash his or her settlement check. **If your settlement check is lost or misplaced, you should contact the Settlement Administrator immediately to request a replacement.**

| WHAT HAPPENS IF THE COURT APPROVES THE SETTLEMENT |
| :---: |

**10.      What am I giving up to get an Individual Settlement Payment?**

If the Court approves this Settlement, and unless you exclude yourself, you will become a Participating Class Member, and that means that you cannot sue, continue to sue, or be a part of any other lawsuit against Defendant concerning the legal claims being resolved in this Settlement.  Specifically, you will be giving up or "releasing" the claims described below:

**Released Parties:**  Means Defendant Aramark Services, Inc., and all affiliated parties and entities, including all past and present affiliates, parents, subsidiaries, predecessors, owners, members, successors, shareholders, divisions, insurers, counsel, clients (Wal-Mart and Cisco), actual or alleged joint employers, and each of these entities' past and present directors, officers, employees, partners, shareholders, members and representatives.

**Released Class Claims**:  As of the Effective Date, all Participating Class Members fully and finally release the Released Parties from the Released Class Claims that arose during the Class Settlement Period.  The "Released Class Claims" means all claims, rights, demands, liabilities, penalties and causes of action, asserted in the Action, and all claims that could have been asserted in the Action arising from the same alleged facts in the complaints, including causes of action for or based on (1) failure to pay minimum wages for all hours worked; (2) failure to pay overtime compensation; (3) failure to provide meal periods and pay meal period premiums; (4) failure to provide rest periods and pay rest period premiums; (5) failure to timely pay wages during employment and all final wages; (6) failure to provide accurate itemized wage statements; and all claims for attorneys' fees and costs based on the foregoing (the "Released Class Claims").

**11.      What PAGA Claims are released by this Settlement?**

If the Court approves this Settlement, the PAGA Members cannot sue, continue to sue, or be a part of any other lawsuit against Defendant concerning the PAGA claims resolved by this lawsuit based on the following release.

**Released PAGA Claims**:  As of the date of the Effective Date, Plaintiff, as representative of the State of California and on behalf of the LWDA and as representative of the PAGA Members, fully and finally releases the Released Parties from the Released PAGA Claims for the PAGA Settlement Period.  The "Released PAGA Claims" means all claims for civil penalties under PAGA that were or could have been asserted in the Lawsuit based on the same alleged facts in the PAGA letter sent by Plaintiff to the LWDA, including but not limited to claims for violations of the California Labor Code for unpaid minimum wages, unpaid overtime wages, unpaid meal period premiums, unpaid rest period premiums, inaccurate wage statements, failure to keep accurate records, and failure to timely pay wages during employment or at termination.

## EXCLUDING YOURSELF FROM THE CLASS SETTLEMENT

**12.      How do I exclude myself ("opt out") of the class settlement?**

If you wish to pursue your own separate lawsuit against any of the Released Parties for the claims asserted in the Action on behalf of the Settlement Class, or if you otherwise wish not to participate in the class settlement for whatever reason, you should exclude yourself from the class settlement (that is, "opt out" of the class portion of the Settlement).  However, you cannot opt out of the PAGA portion of the settlement.  Those who opt out of this Settlement and who are also PAGA Members will still be bound by the release of PAGA in this Settlement and will receive an Individual PAGA Payment.

To opt out of the class portion of the Settlement and the Released Class Claims, you must provide a signed and dated letter to the Settlement Administrator requesting to be excluded.  The letter must include the case name and number, your name, address, and last four of your social security number, must be signed by you, and must reasonably communicate your election to be excluded from the class Settlement.  The letter must be postmarked and mailed to the Settlement Administrator at the following address (or in the enclosed envelope) on or before _____, 2025.  [*45 calendar days within mailing of Notice*] Opt-out requests postmarked after the deadline will be invalid.

[Settlement Admin address]

**13.      If I don't exclude myself from the class settlement, can I sue Defendant for the same thing?**

No.  Unless you exclude yourself, you give up any right to sue the Released Parties for the Released Class Claims.  If you have a claim or lawsuit already filed against Defendant or any of the Released Parties, you should speak to your lawyer in that case immediately.

You cannot exclude yourself from the PAGA portion of the Settlement and you cannot sue the Released Parties for the Released PAGA Claims later if this Settlement is approved.

## OBJECTING TO THE SETTLEMENT

**14.      How do I tell the Court that I do not agree with the Settlement or believe it is not fair?**

You can ask the Court to deny approval by filing an objection.  You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement.  If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue.  If that is what you want to happen, you should object.  Even if you object, if the Court approves the Settlement, then you will still receive the Individual Settlement Payments and be bound by the releases in this Settlement unless you opt-out of the Class Settlement.  You can either object to the Settlement in person at the Final Approval Hearing, or you can submit a written objection.

If you submit a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for hiring and paying that attorney.  All written objections and supporting papers must (a) clearly identify the case name and number (*Correa v. Aramark Services, Inc.*, Case No. 5:24-cv-02223-EJD), (b) be mailed to the Settlement administrator at _____, and (c) be postmarked on or before [*45 calendar days within mailing of Notice*]." The written objection should also describe all legal and factual reasons that you object to the terms of the settlement.  You should also include or attach any documents upon which your objection is based.

## THE FINAL APPROVAL HEARING WITH THE COURT

**15.    When and where will the Court decide whether to grant final approve the settlement?**

The Court will hold a Final Approval hearing concerning the Settlement on _____, 202_ at _____, in the Robert F. Peckham Federal Building & United States Courthouse, Courtroom 4—5th Floor, 280 South 1st Street, San Jose, CA 95113.  At this hearing the Court will determine whether the Settlement should be finally approved as fair, reasonable, and adequate.  The Court will also be asked to approve Class Counsel's request for attorneys' fees and costs, the Class Representative's Enhancement Award, and the Settlement Administrator's fees and expenses.

The Court may reschedule the Final Approval hearing without further notice to Settlement Class Members.  You should check the Northern District of California's website (https://www.cand.uscourts.gov/) or you can contact Class Counsel to verify the date and time of the Final Approval hearing.

**16.    Do I have to come to the hearing?**

No.  Class Counsel will answer any questions the Judge may have.  But you are welcome to come at your own expense.  If you timely submit a written objection, you don't have to come to Court to talk about it.  You may also hire and pay your own lawyer to attend if you so desire.

## GETTING MORE INFORMATION

**17.    Whom may I contact if I have questions about the settlement?**

You may contact Class Counsel at the contact information listed above in Paragraph 4 if you have any questions about the Settlement.  The Settlement Agreement and other settlement documents are available at no charge on the Settlement website at _____.  You may also contact the court-appointed Settlement Administrator at:

ILYM Group, Inc.
[Address]
[Address Line 2]
[Phone Number]
[Email Address]

This notice summarizes the proposed settlement.  For the precise terms and conditions of the Settlement, please see the Settlement Agreement available by contacting Class Counsel, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, Office of the Clerk, Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, Room 2112, San Jose, CA 95113, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT.**

# EXHIBIT  B

 Outlook

**Thank you for your Proposed Settlement Submission**

**From** no-reply@formassembly.com <no-reply@formassembly.com>
**Date** Tue 2/10/2026 4:18 PM
**To**  Michaela Murphy <mmurphy@aequitaslegalgroup.com>

Caution: This is an external email and may contain [malicious] links and/or attachments. Do not click any link and do not open attachments unless you have verified it is safe with the sender.

02/10/2026 04:18:01 PM

Thank you for your submission to the Labor and Workforce Development Agency.

Item submitted: Proposed Settlement

On 02/10/2026 04:18:01 PM your Proposed Settlement was successfully processed for case number LWDA-CM-1010923-24

If you have questions or concerns regarding this submission or your case, please send an email to pagainfo@dir.ca.gov.

DIR PAGA Unit on behalf of
Labor and Workforce Development Agency

Website: http://labor.ca.gov/Private_Attorneys_General_Act.htm